### GABLE v. RAUCH.

1. WILLS—PRACTICE.—In all trials of "will" or "no will" in Circuit Court on appeal, the executor or party propounding the will shall be permitted to open and reply in evidence and argument.
2. EVIDENCE—WITNESS.—For the purpose of showing the knowledge or familiarity of a witness with a particular subject, his experience in that line may be proven.
3. IBID.—WILLS.—A writing purporting to be a will may be introduced in evidence when the signatures of the testator and the subscribing witnesses are proven, although two of them say they do not remember the act of execution.
4. CHARGE.—In that portion of the charge here excepted to, the Judge did not give an opinion as to the sufficiency of the testimony, but only endeavored to instruct the jury as to the questions that would naturally arise.
5. WILLS—PUBLICATION OF.—A will may be good without any words of the testator declaratory of the nature of the instrument, or any formal recognition of it, or allusion to it.
6. PRACTICE—JURY.—After a paper is admitted in evidence, the jury may inspect it.
7. WILLS—TESTAMENTARY CAPACITY.—The Judge properly explained and submitted to the jury the question of testamentary capacity.
8. IBID.—UNDUE INFLUENCE.—In order to attack a will on ground of undue influence, it must be shown to have been used before or at time of execution.
9. IBID.—REVOCATION OF—DEEDS.—A will is revoked by deed only when the deed conveys the same property, and a clear, full intention of the testator to revoke is shown.
10. IBID.—CHARGE.—It is harmless for a Judge to refer to the propounded will as "the will," and to the deceased as "testator."
11. CHARGE.—It is not error for the Judge to call the attention of the jury to the different modes of statement by the witnesses.
12. EXCEPTION too general.
13. PRACTICE—JURY.—A Judge may permit the jury to take into their room any paper in evidence.
14. IBID.—IBID.—VERDICT—WILLS.—The jury may write their verdict on the paper purporting to be the will, on the trial of "will" or "no will."

Before BENET, J., Lexington, September, 1894. Affirmed.

Petition by Mary M. Gable for proof of will of John V.

Gable in solemn form, at instance of Laura A. Rauch, Mary Harman, and Thomas B. Gable. From a decree in probate court in favor of the will, contestants appeal. From judgment of Circuit Court in favor of will, contestants appeal on following exceptions:

1. Because his Honor erred in allowing the witness, S. P. Wingard, to testify that he had held the offices of sheriff, clerk of court, probate judge, and state senator, and for the length of time that he had held said offices in Lexington County.

2. For that his Honor erred in admitting in evidence the paper purporting to be the last will and testament of John V. Gable, deceased, when two of the subscribing witnesses thereto, to wit: Henry W. Kleckley and D. N. Shull, both testified that the said John V. Gable did not sign said paper in their presence, and that S. P. Wingard, whose name also appears as a witness thereto, did not sign said paper in their presence, and it is respectfully submitted that his Honor erred as matter of law therein.

3. For that his Honor erred as matter of law in holding that the proponent was entitled to the opening and reply in the argument, when no testimony of any kind or character had been introduced by the contestants.

4. For that his Honor erred in charging the jury that "the attempt to prove wills invalid from one cause or other, from the very nature of the case, is seldom in Court, in controversy like this, for the reason that wills are generally carefully and usually prepared by experienced lawyers, who see to it that the execution is in accordance with law."

5. For that he erred in charging the jury: "There is no law to prevent a father disinheriting his whole family, even his widow; no law to prevent making a capricious, unjust, foolish, absurd will; unnatural, unaccountable; provided, when he makes it, he had mental capacity to know what he was doing."

6. For that he erred in charging the jury: "If you find that Mr. Wingard was for twelve years probate judge, and

that he was an expert in preparing wills, and knowing all about the law that governs the attestation of wills, and if you believe that it is likely that he, being an experienced man, if he was so, would see to it that the will was properly executed, it is for you to say whether that is likely to be the case, or that the testimony of Shull and Kleckley is to be taken instead of his."

7. For that he erred in charging the jury: "Does Mr. Wingard testify positively, does he say that Mr. Gable put his hand on the paper and said, 'Here is my will, and I want you' (or something like that) 'to witness it for me.' Is it true, and does Mr. Wingard say it is true, that then Gable signed, in the presence of those three, Kleckley, Shull, and Wingard, and then as fast as a man could write after each other, if it is true, if he said so, that Kleckley signed first, that Shull signed second, that he had signed last? If you take that to be true, then, of course, that would amount to proof of due execution of the will."

8. For that he erred in charging the jury: "If he (Kleckley) says, 'To the best of my recollection, I didn't see him sign,' on the one hand, and if Wingard says, 'I saw him sign, in my presence and in the presence of others,' it is for you to say which of those two statements ought to weigh most with you—the positive testimony of Wingard or the testimony of Kleckley, that to the best of his recollection that was the case."

9. That he erred in charging the jury: "Then, if you come to the conclusion that Wingard's testimony is to control you, for reasons best known to yourself, you are not required to take any other steps; but you could find for the will at once. But if you are in doubt, then you take up the testimony of Nettie Gable."

10. Because he erred in charging the jury: "I charge you as matter of law that if you believe from the evidence that these parties were in the same room, in such position to each other as they might have seen each other, even in

7—50

the absence of positive proof that they did see each other, the law would imply constructive presence."

11. For that he erred in charging the jury: "What was said on the occasion of the signing of the will, and by whom, I charge you it is not necessary that the testator should have said a word at all. Whether he said it or not, is a matter for you to say from the evidence; but if you believe he said nothing, that is not to affect the validity of the will."

12. Because he erred in charging the jury: "It is for you to say whether it is reasonable—not likely, or more or less likely—that Kleckley and Shull would have affixed their names as witnesses to the will without seeing the testator sign his name."

13. Because he erred in charging the jury: "As part of that evidence you can take the will and read it, it is in evidence: 'In testimony whereof, I have this, the 28th of December, 1885, subscribed my name, affixed my seal, in the presence of these witnesses, who, at my request, in my presence, and in the presence of each other, have signed their names to the due execution thereof. John V. Gable, Henry W. Kleckley, D. N. Shull, S. P. Wingard."

14. For that he erred in charging the jury: "That less mental capacity, lower degree of mental power, is necessary to make a valid will than to make a valid contract or deed."

15. For that he erred in charging the jury: "Are you to come to the conclusion that because of testimony, if there was such testimony, that while in Virginia, in the war, he said something about he was so hungry he could eat a whole ham, etc.; if it is true, if Kleckley so testified, that he was in the habit of using sometimes vulgar language, etc.; or if it is true, and did Kleckley so testify, that he was a man of rather weak mind, as to satisfy you that he didn't have capacity to make a will?"

16. Because he erred in charging the jury: "You have heard, and it is good law, that even an insane person can make a good will, but it must be satisfactory evidence that

when that insane person made his will, he did so in a lucid interval."

17. Because his Honor erred in charging the jury: "No influence exerted after the will can operate in the least to affect the will; it must be evidence of undue influence at the time of making the will and before it, and connected immediately with it, as I have charged you before."

18. Because he erred in refusing to charge the jury: "That if the jury believed that John V. Gable conveyed by deed or otherwise, all of his property to A. A. A. A. Gable and Mrs. Wessenger since the execution of the will, it is *ex necessitate* a revocation of the same."

19. Because he erred in charging the jury: "Before it could be a revocation of necessity, you would have to be satisfied, by the preponderance of the evidence, that it was a duly executed deed, properly signed and properly witnessed, and that it was such a paper, and was as solemn and as formal as the will itself, and that it conveyed the property embraced in the will, or at least conveyed the property embraced in the will, the whole of it; you must have evidence to satisfy you of that fact before you could say it was a revocation *ex necessitate*—by necessity; and also, in addition to that, you have to be satisfied by the preponderance of the evidence that it was the intention of Gable to revoke his will—clear, full intention must accompany the act of revocation."

20. Because he erred in refusing to charge the jury: "That if the jury believe J. V. Gable intended to revoke his alleged will by the execution of a deed or other instrument of writing, conveying all his property to A. A. A. A. Gable and Mrs. Wessenger, that it would amount to a revocation."

21. For that his Honor, in his entire charge to the jury, referred to the paper purporting to be the last will and testament of John V. Gable, deceased, "as the will" of John V. Gable, and "as the will," and frequently referred and styled John V. Gable as "the testator," and thereby misled

the jury and caused them to believe that his Honor considered said paper to be the last will of the said John V. Gable, deceased, and it is respectfully submitted that his Honor erred as matter of law therein.

22. For that his Honor, in referring to the testimony of the witness, S. P. Wingard, misled the jury by styling Wingard's testimony as positive testimony, and Kleckley's as "to the best of my recollection," and thereby caused the jury to believe that his Honor thought the testimony of S. P. Wingard should outweigh the testimony of Kleckley and Shull.

23. For that his Honer's entire charge to the jury was calculated to, and in fact did, cause the jury to believe that his Honor thought that the paper purporting to be the last will of John V. Gable, deceased, was properly executed and ought to stand, and it is respectfully submitted that he erred as matter of law therein.

24. For that his Honor erred as matter of law in telling the jury to take the will into their room and write their verdict on the back of it.

*Messrs. Graham & Nelson,* for appellant, cite: *Charge:* Art. 4, sec. 26, Con. 1868; 4 S. E. R., 816; 5 S. C., 69; 15 S. C., 381; 16 S. C., 629; 18 S. C., 108; 63 Ga., 639; 38 Ga., 50; art. V., sec. 26, Con. 1895; 47 S. C., 488. *Attestation:* 12 Rich., 141; 37 S. C., 352. *Undue influence:* 1 Bail., 96; 1 Bay, 349. *Publication:* 1 Bay, 349; 49 S. C., 159; 11 N. Y., 220; 35 N. Y. Eq., 480; 36 N. Y., 416; 67 N. Y., 409; 12 Rich., 141; 6 Dem. N. Y., 347; 8 Mo. App., 458. *Opinion of witnesses as to sanity:* 7 Gray., 75; 47 N. H., 120; 65 Pa. St., 368. *Testamentary capacity:* 7 Rich., 479; 5 Ala., 81; 33 Ala., 555; 65 Pa. St., 368; 58 Mo., 307; 75 Ill., 260; 21 La. Am., 58; 29 Ark., 151; 39 Vt., 267; 8 Conn., 254; 3 Wash. C. C., 580; 4 Wash. C. C., 262; 71 Mo., 553; 3 Sand. Ch., 351. *Revocation:* 28 Ga., 533; 5 Saw. C. C., 282; 7 Johns Ch., 268; 5 Denio, 322; 14 How., 395; 5 Rich., 116; 6 Ind., 110; 2 Ves., jr., 601; 6 Ves., jr.,

199; 8 Ves., jr., 106; 3 Russ., 28; 2 Jur. N. S., 1041; 9 Tr. Ch. Rep., 178; 1 Wheat. Pa., 246.

*Mr. Andrew Crawford*, contra, cites: *Charge:* Art. IV., sec. 26, Con. 1868; 47 S. C., 488; 5 S. C., 69, 66; 19 S. C., 94; 24 S. C., 505; 38 S. C., 30; 43 S. C., 150. *Execution of will:* 49 S. C., 159; 9 Rich., 135; 95 N. Y., 330; 27 N. Y., 9; 8 Rich., 135; 1 Mill., 338. *Opening and reply:* Gen. Stat. 1872; 37 S. C., 348. *Unjust will:* 49 S. C., 159; Cheves, 37. *Attestation:* 5 Rich., 212; 3 Strob., 297. *Revocation:* 16 S. C., 42; 43 S. C., 151; 2 Strob., 34; 8 Rich., 142; 3 Strob., 44; Cheves' Eq., 148; 39 S. C., 21; 14 S. C., 474; Rice's Eq., 243; 10 Rich., 200.

July 14, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. A proceeding to prove the last will and testament of John V. Gable, in solemn form, was had in the court of probate for Lexington County, in this State, and after a trial there had, the decree of J. W. Mitchell, Esq., as probate judge, was pronounced, wherein it was held that the paper submitted was the last will and testament of the said John V. Gable. An appeal was taken from such decree to the Circuit Court, which came on to be heard before his Honor, Judge Benet, and a jury at the September, 1894, term of the Court of Common Pleas for Lexington County, in said State. The verdict was in favor of the will. The Circuit Judge sustained such verdict. After judgment being entered therein, an appeal was taken to this Court on twenty-four grounds, which will be reported.

It now remains for this Court to pass upon the same. At the trial the contestants, who are the appellants here, offered no testimony, and demanded as their right to open and close the argument. This demand was denied by the Circuit Judge. His refusal in this matter is made the basis of the third ground of appeal. We fail to see any error in this ruling of the Circuit Judge. The general statutes of 1882, in section 1872, provides that "in

all trials upon appeals from the probate court, in which the question of will or no will is in issue, the executor, or parties propounding the will, shall be admitted to open the case and to reply in evidence and argument." See *Ex parte Brock*, 37 S. C., 352.

So far as the first exception is concerned, it is without merit, for two reasons. First. The Circuit Judge did not pass upon the question of the competency of S. P. Wingard's answer to the inquiry as to the public office he had held. The Circuit Judge merely remarked, when objection was made: "I can't rule on it until I see whether relevant." The "Case" shows that nothing was said by way of objection after the testimony was given; thus it appears that the Circuit Judge was not called upon to rule whether the testimony was relevant or not. Second. It becomes apparent, in the course of examination of Mr. Wingard, that the proponents wished to develop that he had been for twelve years probate judge of Lexington County, and that the matters of wills were within the jurisdiction of the probate court; that Mr. Wingard was very familiar with the legal requisites of wills, having written sixty or seventy wills for other persons, in addition to the conversance with the same from his long connection with the probate court as its presiding officer. This exception is overruled.

The second ground of appeal relates to the admission in evidence by the Circuit Judge of the paper purporting to be the will of John V. Gable, when two of the subscribing witnesses thereto testified that the alleged testator did not sign the same in their presence, and also that S. P. Wingard, the third witness, did not sign in their presence. The appellant states the testimony of at least one of the witnesses too strongly, for he did say that on the day the will was signed, he, with John V. Gable, S. P. Wingard, and Henry W. Kleckley, were in a very small room, where he and Kleckley had been summoned by S. P. Wingard to witness the will of Gable; that he and Kleck-

ley did sign the will, but he could not remember seeing
Gable or Wingard sign; but admitting that the witnesses,
Shull and Kleckley, did swear, years after, 28th December,
1885, although present by request to witness Gable's will,
where S. P. Wingard was present for that purpose also,
that they did not see Gable or Wingard sign; Wingard
and Miss Gable swore they did sign the will, and every
name to the same was proved to be genuine, and the will
was in existence, why should· not the paper writing be be-
fore the Court and jury? How could you examine witnesses
as to signatures of an existing instrument without its pro-
duction before the Court in testimony? This is not the
case of a lost will, but the paper writing is in existence,
with the signature of testator and the admitted signatures
of three witnesses, each of whom testifies that the signature
is his genuine signature, made on the 28th day of Decem-
ber, 1885, while the testator and three subscribing witnesses
were present, in a room in the town of Lexington, where
they were assembled for the purpose of the execution and
attestation of the will of John V. Gable. Merely because
one or two of the witnesses, whose names appear on the
paper, state that they have no recollection of seeing the tes-
tator sign, or the third witness sign, cannot and should not
prevent the paper from being introduced in evidence. This
last fact does not, of itself, establish the proper execution
of the paper. A similar question was raised in the case of
*Welsh* v. *Welsh*, 9 Rich., 133. There the Court of Appeals
held that "it cannot be maintained as a sound legal propo-
sition that each witness must recollect and prove the fact
of signature, or testator's acknowledgment. Such a princi-
ple would place the validity of ˙wills on a very precarious
basis, depending mainly on the selection of persons of re-
tentive memories" (to be witnesses). We are aware that
these latter observations would seem to apply to the ulti-
mate solution of the questions as to the attestation of wills
by the jury, but with how much more force can they be
made to the admission in evidence of the paper in contro-

versy, before the jury are called upon to decide the other serious questions.    We do not find any error here.    A question somewhat similar to this was decided in the affirmative in the recent cause of *Kaufman* v. *Caughman*, 49 S. C., 159.

As to the fourth exception, an examination of its language shows that it is a pure abstraction, and hence we overrule it.

The fifth exception presents an abstract proposition.    It is overruled.

The sixth, seventh, eighth, ninth, tenth, and twelfth exceptions may be considered as a group.    It is necessary to remember that these questions, as to the Judge's charge to the jury on the testimony, arose under the provisions of the Constitution of this State adopted in 1868, and not under the Constitution adopted in 1895.    It seems to us that, under the power given "to state the testimony," that the Circuit Judge did not overstep the limits. As we understand the language used by the Circuit Judge, as pointed out in this group of exceptions, no opinion as to the sufficiency of the testimony was expressed by the Circuit Judge; he was only endeavoring to present to their minds what questions, under the testimony, would naturally suggest themselves.    These exceptions are overruled.

The eleventh exception raises the question whether it is necessary, in order that a will may be declared valid, that the testator should have declared that it is his will.

There was testimony both that the testator did declare the paper to be his last will and testament, and also that Mr. S. P. Wingard, who prepared the will for the testator, and at his instance, did declare, in testator's presence, to the proposed witnesses, that it was John V. Gable's will.    Hence, in his charge, the Circuit Judge felt it his duty to declare what was the law under such circumstances—whether it was necessary for the testator to declare that the paper writing was the will of the testator. He held that it was not necessary for the testator so to declare.    The Judge was correct.    As was well said in *Ver-*

*dier* v. *Verdier*, 8 Rich., 141: "Neither is it necessary, as has been insisted, that there should be proof of *formal publication* of the will by the testator. The will may be good, without any words of the testator declaratory of the nature of the instrument, or any formal recognition of it or allusion to it. Jar. on Wills, 71–2, and cases cited." We do not think the Circuit Judge erred in this particular.

The thirteenth exception in effect charges error in the Circuit Judge in stating to the jury that the paper writing propounded was in evidence and might be read by them. We know of no rule of law that forbids a paper which a jury is required to pass upon from being inspected by the jury. When a paper is once in evidence, it is not error for the Circuit Judge to state to the jury that they may inspect that paper. This exception is overruled.

The fourteenth exception alleges error in the charge of the Circuit Judge when he stated to the jury "that less mental capacity, lower degree of mental power, is necessary (required) to make a valid will than a valid contract." This extract from the charge of the Circuit Judge gives but a slight idea of that part of such charge which relates to the requisite mental capacity of a person making a valid will, as we shall presently show by quoting the language of the charge. Still, even the extract quoted by appellant is not without authority, even in this State. In the case of *Kirkwood* v. *Gordon*, 7 Rich., 479, it is said: "It is objected that the test of testamentary capacity furnished by the Judge" (O'Neall, afterwards Chief Justice,) "was error, and may have misled the jury. 'I said,' says Judge O'Neall, 'to the jury that the test—"capacity enough to make a contract"—was not always the true rule; for sometimes it might be that a higher degree of capacity to make a contract would be required than to make a will. In making a will, if the testator had capacity enough to know his estate, the object of his affections, and to whom he wished to give it, that would be enough.'

These views are well sustained by authority; quoting *Comstock* v. *Hadlyme*, 8 Conn. R., 254; *Greenwood* v. *Greenwood*, 3 Curtis, appendix II." But the Circuit Judge left the jury in no doubt as to the law regulating the capacity required of a testator, for he said: "I charge you that the test of capacity to make a will is this: Did the testator, at the time of the execution of the will, know what he was doing; did he know his property and the objects of his bounty; did he remember those that he was leaving out of his will, and did he do it on purpose; and did he intend to include only those that he made beneficiaries of his will? I charge you, further, that mere weakness of mind, or feebleness of mind, is not enough to invalidate a will. Incapacity is more than that. You must be satisfied, before you find incapacity—you must be satisfied by the preponderance of the evidence—that Gable did not know what he was doing when he wrote that will; that he did not have intelligence enough to comprehend the nature and effect of what he was doing; that he did not know the property he was trying to dispose of, and the objects of his bounty, those to whom he intended to leave his estate; and you must be satisfied of that before you can find that Gable did not have mental capacity to make a will." Just after this language, the Circuit Judge used that quoted in the exception, but added much. This exception is overruled.

The fifteenth exception refers to a statement of some testimony to the jury bearing on the question of John V. Gable's capacity to make a will. Under our views expressed in disposing of the sixth, seventh, eighth, ninth, tenth, and twelfth exceptions, this exception must, also, be overruled, for the reasons there stated.

The sixteenth exception presents a pure abstract proposition of law. While the Circuit Judge did not err therein, still there is nothing therein contained for us to consider. Accordingly, this exception is overruled.

The seventeenth exception relates to an alleged error of the Circuit Judge in his charge as to the matter of the exer-

cise of undue influence upon the testator in making his will. We are not able to see that the Circuit Judge failed either to grasp the idea of undue influence or to correctly express the law on this subject. Certainly the undue influence of others upon the testator in the making of his will must have occurred at the time it was written or prior to its execution. This exception is overruled.

The eighteenth and nineteenth exceptions may be treated together. They both relate to the revocation of a will by a deed, subsequently executed, covering the whole property of testator. The appellants asked the Circuit Judge to charge, in the light of the testimony in this case, that the execution of a deed, after the making of the will by the testator, covering the whole of the property included in the will, would, of necessity, operate as a revocation of the will. This the Circuit Judge refused to do, in these words: "I cannot so charge you. Before it could be a revocation of necessity, you would have to be satisfied, by the preponderance of the testimony, that it was a duly executed deed, properly signed and properly witnessed, and that it was such a paper, or was as solemn and as formal, as the will itself, and that it conveyed precisely the property embraced in the will, or at least conveyed that property embraced in the will—the whole of it; you must have evidence to satisfy you of that fact, before you could say it was a revocation *ex necessitate*—by necessity. And also, in addition to that, you have to be satisfied, by the preponderance of the evidence, that it was the intention of Gable to revoke his will—clear, full intention must accompany the act of revocation. On the other hand, if you come to the conclusion that he did make such a deed, embracing certain property which he desired to convey to certain parties, even if that deed embraced all the property embraced in the will, that it was his intention, and you are so satisfied by the evidence, that that deed was simply to be an affirmation of the will and not a revocation of it, then it could not be a revocation—can be no revocation unless the

testator clearly intended to revoke, and the evidence must satisfy you of that fact. I charge you that it requires as much mental capacity to revoke as to make a will." We have reproduced here the request to charge, and the charge as made, in order to show that the Circuit Judge substantially charged the request, placing about his charge such restrictions as he deemed safe and proper. Under our views of this branch of the case, we are unable to view this whole matter of the execution of the deed in any other light than as presenting an abstract question. No deed was ever proved. A paper alleged to be the deed was presented in open Court to the contestants, but it was never proved—the signature of the grantee, the signatures of the witnesses, and the contents of the paper were never proved. How, then, could the effect of such an instrument be determined? The Circuit Judge is required to construe written instruments. How could the Circuit Judge charge a jury as to whether the papers—the deed and the will—covered, by the terms employed in each, the same property? If it had been a lost paper, we see how secondary evidence could have been resorted to to prove the contents of the deed. But no such a condition existed in this case. The deed was in Court, in the hands of the contestants, and they would not, or did not, see proper to present it in evidence. Such being the facts, it was not the duty of the Circuit Judge to make any charge upon the effect of such an alleged deed. It seems to us that the appellants have no basis, therefore, for any such contest as is embodied in this exception. From an examination of the charge responsive to this request, we are not prepared to say that the Circuit Judge committed any error. It was a revocation by a *deed* that appellants made the basis of their request. The Judge's charge must be construed as answering their request, as to a revocation of this will by a *deed*, and in no other way. This exception is overruled.

The twentieth exception relates to a revocation by a deed or other instrument of writing, just as is set out in the eight-

eenth exception. This presents a pure abstract question, for there was no deed or any other instrument in writing signed by John V. Gable, after he executed his will, put in evidence at the trial, as the "Case" abundantly proves. It is overruled.

The twenty-first exception complains that the Circuit Judge referred to the will as propounded as "the will," and to John V. Gable as the "testator." The jury were charged with the duty of determining the question of "will" or "no will." They understood what the paper writing was, and who was its alleged author. We cannot see how the Circuit Judge could have done any harm by using the terms he did when referring to one and the other. This exception is overruled.

The twenty-second exception is of like character with that just disposed of. When a witness speaks positively, saying: Such a statement was made in my hearing—"I did this," "I said this"—it is called positive testimony. The Circuit Judge so styled it. Again, when a witness testifies: "To the best of my recollection, he did not say or do any particular thing." He does not state facts as positively as one who says: "He did say," "he did do;" "he did not say," "he did not do." The Circuit Judge was endeavoring to have the jury notice the difference in these two modes of statement. It was not error, and this exception is overruled.

The twenty-third exception is too general to require any notice at our hands, under the well established rule that the office of an exception is to lay the finger upon some error of law or fact which the Court must consider. It is overruled.

The twenty-fourth exception embraces what appellants allege was error in the Circuit Judge in directing the jury to take the will in the jury room when they retired to make up their verdict, and to enter their verdict on the back of it. It seems that this exception was made under a misapprehension of counsel as to the language of the Circuit Judge. All that is said on this subject is:

"His Honor told the jury to take the will with them" (language of the "Case"). This certainly was not error. Nothing should be carried out by the jury to the room without the approval of the presiding Judge. There is no rule of law forbidding or restricting the Circuit Judge in his committing papers introduced in testimony to the custody of the jury when they retire. Of course, no written or printed papers not introduced in evidence should be ordered by the Circuit Judge to be given to the jury when they retire. Nor is there any law forbidding the verdict of the jury to be written on a will submitted to them, to be passed upon as a will or no will. This exception is overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed, and the cause be remanded to the Circuit Court to take such action therein as is conformable to law in carrying out the judgment of this Court.