20370

J. Lake HELLAMS, Appellant, v. Pauline ROSS, Respondent.
(233 S. E. (2d) 98)

*Messrs. McAlister, Compton, and McAlister,* of Laurens, *for Appellant,*

*Messrs. Younts, Spivey & Gross,* of Fountain Inn, *for Respondent,*

March 1, 1977.

LEWIS, Chief Justice:

The issues involve the validity of the will of the late Marvin Robert Bass and, particularly, his testamentary capacity at the time he executed the instrument.

The testator died in Laurens County on March 9, 1975, leaving a will dated May 2, 1974, under which he devised all of his property to the Rabon Creek Baptist Church to the exclusion of his wife, the respondent herein. He had no children.

The respondent-widow objected to the probate of the will upon the grounds that the testator lacked testamentary capacity to make it and that it was the result of undue influence. The Probate Court subsequently overruled the attack upon the validity of the will and admitted it to probate. However,

upon appeal to the Circuit Court, a jury found that, while the deceased did not act under undue influence, he did not have sufficient mental capacity to make a will on May 2, 1974, the date upon which he signed the instrument offered for probate.

The executor (appellant) took the position at the trial that there was no evidence to sustain the conclusion that the deceased was mentally incompetent or acted under undue influence at the time of the execution of the will and, accordingly, moved for a directed verdict in favor of the will upon that ground. This motion was refused, as were the alternative post-trial motions for judgment notwithstanding the verdict and a new trial, the latter based upon alleged error in the admission of testimony. This appeal by the executor is from the denial of the foregoing motions. The charge that the lower court erred in denying the motions for a directed verdict and for judgment notwithstanding the verdict present the sole issue of whether there was any evidence to support the finding of the jury that the testator lacked mental capacity to make a will, the jury having found that the charge of undue influence had not been proved.

It is conceded that the will was properly executed. The charge of testamentary incapacity was based upon allegations that the excessive use of alcohol and drugs had affected the testator's mental faculties. The testimony showed that the testator had been a heavy consumer of alcoholic beverages for a number of years. In fact, it is inferable that his consumption of intoxicating beverages had reached a point that he was an habitual drunkard; but the testimony shows conclusively that the testator was not under the influence of intoxicants on the date of execution of the will. The issue then is whether there was any evidence from which a reasonable inference could be drawn that the testator's intemperance had so affected his mental faculties as to render him incompetent to make a will even though he was not actually intoxicated at the time he executed it.

The burden of proof was upon respondent, as the contestant, to show a lack of mental capacity. This principle was more fully stated in *Havird v. Schissell,* 252 S. C. 404, 408, 166 S. E. (2d) 801, 803:

"It is the settled law of this state that when the formal execution of a will is admitted or proved, a *prima facie* case in favor of the will is made out, and that, as a general rule, the burden is then on the contestants to prove undue influence, incapacity or other basis of invalidation, and such burden remains upon the contestants throughout. In determining whether the contestants sustained such burden, the evidence has to be viewed in the light most favorable to the contestants."

The general principles governing the determination of testamentary capacity apply in cases where it is charged that the testator was affected by the use of alcohol or drugs. Therefore, the capacity of the testator to make a will is tested by whether he (1) knew his estate, (2) the objects of his affections, and (3) to whom he wished to give his property. *Sumter Trust Company v. Holman,* 134 S. C. 412, 132 S. E. 811.

Since intoxication is a temporary condition, even an habitual drunkard is presumed to be competent, when sober, to make a will; and the person, who asserts that the excessive use of intoxicants rendered a testator incompetent to make a valid will, must affirmatively show either (1) that at the time the will was made the testator's use of intoxicants had so impaired or deranged his mind that he lacked testamentary capacity even when he was not under the immediate influence of intoxicants or (2) that he was in fact incompetent due to intoxication existing at the time of the making and execution of the will. Annotation in 9 A. L. R. (3d) 15, 59, citing *Black v. Ellis,* 21 S. C. L. (3 Hill) 68; 79 Am. Jur. (2d), Wills, Section 112; 1 Page on Wills, Section 12.39.

A careful review of the record convinces us that the evidence failed to show mental incapacity of the testator at the time the will was made. Although the testimony is undisputed that the testator was a heavy drinker and would sometimes, when on one of his frequent drinking sprees, fire his gun into the ceiling of the house and through the windows, there was no evidence of probative value that his drinking had produced a derangement of his mental faculties when he was not under the influence of intoxicants.

One of the witnesses to the will was dead, but the other two testified. One was the attorney who prepared and supervised the execution of the will and the other was the attorney's secretary. Both certified that the testator came to the attorney's office and requested that the will be prepared, giving directions as to the disposition to be made of his estate. These witnesses were positive in their testimony that the testator was sober, normal in his actions, and possessed of testamentary capacity when he signed the will.

We find no evidence of probative value to counter the positive testimony of the attesting witnesses that the testator was possessed of testamentary capacity when he signed the instrument. The lower court was therefore in error in refusing to grant apptllant's motion for a directed verdict.

Respondent argues, however, that the testimony of the lay or nonexpert witnesses, that testator was "unbalanced" and did not know "what he was doing" when he signed the will, presented a factual issue concerning the testator's mental competency and supports the jury's finding of incompetency. We disagree.

We follow the general rule which permits a nonexpert to "give his opinion concerning the mental condition of a testator when a proper foundation for such testimony is laid by proof of opportunity on his part to observe the testator and of the facts and circumstances upon which the opinion reasonably may be based." 79 Am. Jur. (2d),

Wills, Section 146, p. 380; *Garbade v. Garbade,* 260 S. C. 58, 194 S. E. (2d) 186.

The nonexpert or lay testimony in this case was merely a general conclusion that the testator was "unbalanced" and did not know "what he was doing" based, not upon his condition at the time of the execution of the will but mainly on the fact that he left the family no part of his estate. The witnesses were of the opinion that, if he had been in his right mind, the testator would not have left his property as he did.

The fact alone that the testator disposed of property contrary to what others usually consider fair is not sufficient to declare his will void. This principle is thus stated in *Matheson v. Matheson,* 125 S. C. 165, 171, 118 S. E. 312, 313: "The right to make a will carries with it the right to disregard what the world considers a fair disposition of property. In the case of *Lee's Heirs v. Lee's Executors,* 4 McCord 183, 17 Am. Dec. 722, we find: "That a will is unjust to one's relations is no legal reason that it should be considered an irrational act. The law puts no restrictions upon a man's right to dispose of his property in any way his partialities, or pride, or caprice may prompt him'."

There was also testimony that the testator bought two trailers for considerably more than they were worth; took the sink and some furniture from his home and put it in a rental house; and that about five (5) years before his death he expressed a belief that, if he gave his money to the church, he would go to Heaven. Respondent argues that the bad business deal, using articles from his home to fix rental property, and the belief that by giving his property to the church he would go to Heaven constituted some evidence that the testator was of unsound mind. The belief that the giving of his property to the church would, within itself, get him into Heaven might have been inaccurate but we are not prepared to say that it was evidence of an unsound mind. Neither does the bad business deal nor using his household articles to fur-

nish his rental property reach, under this record, probative value on the question of testamentary capacity.

The remaining question concerns the admissibility of the testimony relative to the statement by the testator that, if he gave his property to the church, he would go to Heaven. Since we have held that this testimony was, under this record, of no probative value on the issue of mental capacity to make a will, we need not determine whether because of its remoteness it was inadmissible.

The judgment is accordingly reversed and the cause remanded to the lower court for entry of judgment in favor of the validity of the will.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.