495 S.E.2d 454

In re ESTATE OF Alice W. WEEKS.

Henry R. WEEKS, Jr., Appellant,

v.

Delores Weeks DRAWDY and Alicia Weeks Foster,
Co–Personal Representatives of the Estate of
Alice W. Weeks, Respondents.

No. 2770.

Court of Appeals of South Carolina.

Heard Dec. 2, 1997.
Decided Dec. 15, 1997.

252

James W. Corley, Columbia, for Appellant.

Harvey M. Spar, of Shimel, Ackerman, Theos, Spar & Kronsberg, Charleston, for Respondents.

ANDERSON, Judge:

Henry R. Weeks, Jr. filed a petition to set aside the 1989 will of his mother, Alice W. Weeks, on the basis she lacked capacity to execute the will. In addition to a general attack on the testamentary capacity of Alice W. Weeks, he contended Alice W. Weeks lacked legal capacity because a guardian and two conservators had been appointed for her. The probate court found Alice W. Weeks did have capacity to execute the 1989 will, and the circuit court affirmed. Henry R. Weeks, Jr. appeals. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In 1989 Henry R. Weeks Jr. brought a proceeding for guardianship and conservatorship of his 81–year–old mother, Alice W. Weeks. By order dated August 10, 1989, the probate court found Mrs. Weeks "to be a partially incapacitated person to the extent that she is impaired by reason of mental deficiency, physical illness and disability, and advanced age to the extent that she lacks sufficient understanding or capacity to make or communicate responsible decisions concerning her person or property." The court appointed Respondent Delores. Weeks Drawdy as Mrs. Weeks's personal guardian. Henry Weeks, Jr. and Respondent Alicia Weeks Foster were appointed as co-conservators of Mrs. Weeks's property. Drawdy and Foster are Mrs. Weeks's daughters. Henry Weeks and Foster were instructed to advise and consult with Mrs. Weeks and Drawdy in the making of any major decisions affecting the estate.

The probate court noted in its order that Mrs. Weeks had claimed she owned the-home at Folly Beach where she resid-

ed, but in fact she and her husband had sold the house in 1971 and Mrs. Weeks was now merely a tenant there. Similarly, she claimed she owned a house in Houston, Texas, which she had sold. Mrs. Weeks asserted she owned a house in Coronado, California, which was accurate. At the hearing, Mrs. Weeks expressed a deep resentment of her son for having brought the guardianship/conservatorship proceeding. She rambled at times and incorrectly stated that Henry was a judge.

Joseph H. Marshall, one of the court-appointed examiners in the proceeding, stated Mrs. Weeks was "an incapacitated person to an extent that she lacks sufficient understanding or capacity to make responsible decisions concerning her person; and/ [sic] she is unable to manage her property and affairs effectively...." He believed Mrs. Weeks had a fairly accurate general understanding of what property she owned, but noted she became confused when describing the property and did not know its value. Mrs. Weeks was able to tell him her birth date and she was 81 years old, but she persisted in saying the present year was 1981 although it was in fact then 1989. According to the 1989 probate court order, Dr. Marshall expressed a reserved opinion to the effect Mrs. Weeks did have capacity to write a will and take care of small expenditures. Dr. Marshall concluded Mrs. Weeks probably suffered from Alzheimer's disease.

Another court-appointed examiner in the guardianship/conservatorship proceeding, Dr. John Fletcher, reported Mrs. Weeks's intelligence function was fair, but she seemed to have arteriosclerosis with some mild degree of senility. He stated, "[I]t seems to me that [Mrs. Weeks] is still capacitated to the point where she is capable [o]f making her wishes known and making her feelings known as to how she wants her money spent and how she wants her property disposed of." However, he recommended a guardian be appointed as well as a conservator who would have some authority over her fiscal affairs without divesting Mrs. Weeks of total control over her property.

On August 15, 1989, five days after the order appointing a guardian and co-conservators was signed, Mrs. Weeks executed the will admitted to probate after her death. In this will

she gave $300 to a church and $500 to the Society for the Prevention of Cruelty to Animals. She left Henry the sum of one dollar ($1.00). She gave the remainder of her estate to her daughters, Drawdy and Foster. In addition, she appointed Drawdy and Foster as the personal representatives of her estate.

Mrs. Weeks's attorney made an audio recording of the execution of the will, from which a transcript was made. In this transcript, Mrs. Weeks knew the date, but she again asserted the year was 1981. She did not know who the current president was, but claimed she lost interest because she did not get to vote. Mrs. Weeks was able to name her three children. She stated she wanted to leave her property to her daughters, and she left Henry one dollar in order to prevent him from contesting the will. She spoke about the property she thought she owned in Folly Beach, California, and Florida. Mrs. Weeks did not remember her attorney, although he had visited her twice before. She was a little confused about the recent probate court proceeding. Throughout the transcript of the will execution, she demonstrated how adamant she was in her disapproval of her son and her intent to leave him as little as possible. Mrs. Weeks stated she did not devise any of her property to the woman who took care of her because she did not want Henry to be able to contest the will for undue influence.

Mrs. Weeks died on July 8, 1995. Her 1989 will was admitted to informal probate in July 1995 and Respondents Drawdy and Foster were appointed co-personal representatives of the estate. By summons and complaint filed March 8, 1996, Henry contested the will, alleging his mother lacked capacity.

When Drawdy and Foster failed to answer the summons and complaint within thirty days, Henry filed an affidavit of default dated May 30, 1996. Drawdy and Foster filed an answer dated June 24, 1996. At the commencement of the hearing on Henry's petition to set aside the will, his attorney moved to hold Respondents in default. The probate court judge found the South Carolina Probate Code[1] does not contemplate, nor require, responsive pleadings in this in-

---

1. S.C.Code Ann. §§ 62–1–100 to 62–7–709 (1987 & Supp.1996).

stance,[2] and noted that no "order of default" had ever been signed. The judge further found even if there was technically a default, there was good cause to set it aside in light of S.C.Code Ann. § 62–1–102 (1987), which provides the Probate Code shall be liberally construed. In addition, the judge found Mrs. Weeks did have testamentary capacity. She knew the natural objects of her affection and she wanted to leave her property to her daughters and not her son. The court explained, "While she was not entirely certain of all that her estate consisted of, she did have the capacity to know and comprehend the nature and extent of her property and was sufficiently aware of what she owned." The judge concluded, "While I find it disturbing to rule in favor of disinheriting a son, there is absolutely no question that this was the Testator's [sic] intention." The judge ruled the will was valid and dismissed Henry's action to set aside the will. On appeal, the circuit court affirmed the findings of the probate court.

## ISSUES

(1) Did the circuit court err in not finding Respondents were in default?

(2) Did the circuit court err in its application of the standard of review?

(3) Did the circuit court err in affirming the probate court's finding that Mrs. Weeks possessed testamentary capacity?

## LAW/ANALYSIS

### 1. ALLEGATION OF DEFAULT

Henry contends Respondents should have been deemed in default for failing to file an answer to his complaint to set aside the will within thirty days and he should be granted the relief requested in his complaint. We disagree.

A formal testacy proceeding is litigation to determine whether the decedent left a valid will. S.C.Code Ann. § 62–3–401 (1987). The proceeding may be commenced by filing a

---

2. The judge stated, "The Will had been admitted to informal probate. A contest brings into issue said admission, and therefore the issues are joined without further pleadings."

petition requesting that the probate court, after notice and a hearing, enter an order probating a will, or by a petition to set aside an informal probate of a will or to prevent informal probate of a will which is the subject of a pending application. *Id.*

■ Apodictically, the statutory scheme articulated in the South Carolina Probate Code does not mandate responsive pleadings. The probate procedure is: (1) the will is probated informally; (2) a petition challenging the will joins the issue; there is no provision for responsive pleading by the proponents of a will prior to trial; and (3) a trial is conducted. South Carolina Code Ann. § 62–3–404 (1987) provides, "Any party to a formal proceeding who opposes the probate of a will for any reason shall state in his pleadings his objection to probate of the will." This statutory provision only applies to a party in a formal proceeding who opposes the probate of a will.

The South Carolina Supreme Court has enacted the South Carolina Rules of Probate Court governing procedure in the probate court. These rules address only a limited number of issues, and there is no procedural rule which requires a responsive pleading to a petition to set aside a will. However, the Probate Code provides in the absence of a specific probate court rule, the rules of civil procedure applicable in the court of common pleas shall be applied in the probate court unless to do so would be inconsistent with the provisions of the Code. S.C.Code Ann. § 62–1–304 (1987). In addition, S.C.Code Ann. § 14–23–280 (1976) provides:

> Proceedings in the court of probate may be commenced by petition or complaint to the judge of probate for the county to which the jurisdiction of the subject matter belongs, briefly setting forth the facts or grounds of the application. A summons shall be issued to the defendants in such proceedings. The manner of service, time for answering and other proceedings relating to the trial, except trial by jury, shall conform as nearly as may be to the practice in the courts of common pleas as provided in this Code.

Under Rule 12(a) of the South Carolina Rules of Civil Procedure (SCRCP), a defendant must serve an answer within

thirty days after service of the complaint. Rule 55(a), SCRCP provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default upon the calendar (file book)." Rule 55(c), SCRCP further provides, "For good cause shown the court may set aside an entry of default and, if a judgment has been entered, may likewise set it aside in accordance with Rule 60(b)." The standard for setting aside an entry of default is whether "good cause" exists under Rule 55(c), whereas the standard to set aside a judgment of default is "excusable neglect" under Rule 60(b).

The decision whether to set aside an entry of default is left to the sound discretion of the trial judge. *Wham v. Shearson Lehman Bros., Inc.*, 298 S.C. 462, 381 S.E.2d 499 (Ct.App.1989). The factors the judge should consider in deciding whether to set aside an entry of default are (1) the timing of the motion for relief; (2) whether the defendant has a meritorious defense; and (3) the degree of prejudice to the plaintiff if relief is granted. *Id.*

The trial judge's decision will not be reversed absent an abuse of discretion. An abuse of discretion in setting aside a default judgment occurs when the judge issuing the order was controlled by some error of law or when the order, based upon factual, as distinguished from legal conclusions, is without evidentiary support. *Ricks v. Weinrauch*, 293 S.C. 372, 360 S.E.2d 535 (Ct.App.1987). The discretionary element makes it clear that the party requesting a judgment by default is not entitled to one as of right, even when the defendant is technically in default. *Id.* Rule 55(c) should be liberally construed so as to promote justice and dispose of cases on the merits. *Dixon v. Besco Eng'g*, 320 S.C. 174, 463 S.E.2d 636 (Ct.App.1995).

In our view, an answer was not mandated by the probate court rules in this instance and the circuit court did not err in finding even if responsive pleadings were necessary under the SCRCP, the probate court did not abuse its discretion in determining there was good cause to excuse any technical default. Accordingly, we affirm the findings below and hold the matter was properly considered on the merits.

## 2. STANDARD OF REVIEW

Henry next alleges the circuit court applied the wrong standard of review on appeal from the probate court because, in accordance with *Havird v. Schissell*, 252 S.C. 404, 166 S.E.2d 801 (1969), on appeal the evidence must be viewed in the light most favorable to the contestants of the will. We disagree.

Initially, we note although the circuit court judge filed an amended order, there is no indication in the record this issue was ever raised to the circuit court via a Rule 59(e), SCRCP motion to alter or amend the judgment. Accordingly, we question whether the issue is properly before us.

■ In any event, the allegation is without merit. The case cited by Henry concerns appellate review of the granting of a directed verdict motion in the circuit court when proceedings were held de novo in the circuit court on appeal from the probate court. However, de novo review has been abolished by the enactment of the Probate Code. Although there is a provision for actions being heard de novo in the circuit court, it is limited to specific circumstances under which a party may move for removal of the original action to the circuit court. *See* S.C.Code Ann. § 62–1–302(c) (Supp.1996). In this case, there was no motion made for removal to the circuit court, and the action was heard in the probate court. Since the circuit court was sitting in an appellate capacity, § 62–1–302(c) does not apply.

■ The South Carolina Supreme Court held in *In re Howard*, 315 S.C. 356, 434 S.E.2d 254 (1993) that the circuit court should apply the same standard of review when it considers an appeal from the probate court as an appellate court would apply on appeal. Thus, if the action is at law, the circuit court should uphold the findings of the probate court if there is any evidence to support them; if the action is equitable, the circuit court may make findings in accordance with its own view of the preponderance of the evidence:

Appeal from the probate court is governed by the provisions of the Probate Code. The Code provides that a final order or decree of the probate court may be appealed to the circuit court. S.C.Code Ann. § 62–1–308(a) (Supp.1992).

The circuit court must hear and determine the appeal "according to the rules of law." S.C.Code Ann. § 62–1–308(d) (1987). As used in this statute, the phrase "according to the rules of law" means according to the rules governing appeals. *See Ex parte White*, 33 S.C. 442, 12 S.E. 5 (1890); *Eagles v. South Carolina National Bank*, 301 S.C. 402, 392 S.E.2d 187 (Ct.App.1990).

None of our decisions has expressly stated what standard of review the circuit court must apply when it hears cases from other courts in its appellate capacity. However, the general standards of appellate review set forth in our decisions suggest the rule that in cases involving an appeal to the circuit court, if there is neither a statute nor a rule of court expressly prescribing a different standard of review, the circuit court must apply the same standard that this Court or the Court of Appeals would apply were the appeal taken directly to either of them.... We, therefore, hold that on appeal from the final order of the probate court in this matter, the circuit court ought to have applied the same standard of review that this Court would apply on appeal.

The rules governing appeals at law and in equity are well settled. If the proceeding in the probate court is in the nature of an action at law, the circuit court may not disturb the probate court's findings of fact unless a review of the record discloses there is no evidence to support them. *Adams v. B & D, Inc.*, 297 S.C. 416, 377 S.E.2d 315 (1989); *cf. May v. Hopkinson*, 289 S.C. 549, 347 S.E.2d 508 (Ct.App. 1986) (appeal from final judgment of master); *In re Estate of Krueger*, 235 Neb. 518, 455 N.W.2d 809 (1990). The standard of review at law is the same whether the facts are found by a jury or the judge sitting without a jury. *See Chapman v. Allstate Insurance Co.*, 263 S.C. 565, 211 S.E.2d 876 (1975) (in an action at law, judge's findings are equivalent to a jury's findings for purposes of appellate review). On the other hand, if the probate proceeding is equitable in nature, the circuit court, on appeal, may make factual findings according to its own view of the preponderance of the evidence. *Ex parte Small*, 69 S.C. 43, 48 S.E. 40 (1904); *Eagles v. South Carolina National Bank*, 301 S.C. 402, 392 S.E.2d 187 (Ct.App.1990).

*Id.* at 360–62, 434 S.E.2d at 256–58 (footnotes omitted). *See also Dean v. Kilgore*, 313 S.C. 257, 437 S.E.2d 154 (Ct.App. 1993) (stating determination of the standard of review turns on whether the cause of action is equitable or legal and holding an action to remove a personal representative appointed pursuant to the terms of a will is equitable in character; thus, the circuit court could make findings in accordance with its own view of the preponderance of the evidence).

■■■ A petition to set aside a will is an action at law. *Golini v. Bolton*, 326 S.C. 333, 482 S.E.2d 784 (Ct.App.1997). In *Golini* we stated:

> An appeal from probate court to circuit court as to the validity of a will is a case at law. *Johnson v. Johnson*, 235 S.C. 542, 112 S.E.2d 647 (1960); *Campbell v. Christian*, 235 S.C. 102, 110 S.E.2d 1 (1959). An action to contest a will is at law. *Martin v. Skinner*, 286 S.C. 527, 335 S.E.2d 252 (Ct.App.1985). If the proceeding in the probate court is in the nature of an action at law, the circuit court may not disturb the probate court's findings of fact unless a review of the record discloses there is no evidence to support them. *Howard*, 315 S.C. at 361, 434 S.E.2d at 257; *see Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

*Id.* at 338–39, 482 S.E.2d at 787.

■■■ The action to set aside the will in this case was one at law; therefore, the circuit court should not have disturbed the findings of the probate court unless there was no evidence to support them. The circuit court specifically cited *In re Howard* and stated it must affirm the findings of the probate court if there is any evidence in the record to support those findings. The circuit court concluded that there was "substantial evidence in the record demonstrating that Ms. Weeks knew her estate, the objects of her affections, and to whom she wished to leave her property." Accordingly, we hold the circuit court did not err in its application of the standard of review.

## 3. CAPACITY TO MAKE WILL

Finally, Henry contends his mother did not have capacity to make the 1989 will. Henry posits a bipartite challenge: (1) she did not have capacity to make a will because the probate

court had recently appointed a guardian for her person and two conservators for her property; and (2) she lacked general testamentary capacity to execute a will. We disagree.

The test of whether the testatrix had the capacity to make a will is whether she knew (1) her estate, (2) the objects of her affections, and (3) to whom she wished to give her property. *Hellams v. Ross,* 268 S.C. 284, 233 S.E.2d 98 (1977); *In re Washington's Estate,* 212 S.C. 379, 46 S.E.2d 287 (1948); *Hembree v. Estate of Hembree,* 311 S.C. 192, 428 S.E.2d 3 (Ct.App.1993). However, the legal test for determining whether or not a person has sufficient mental capacity to dispose of her property by will does not include the proviso that she must have a reasonable basis on which to found her like or dislike of the natural objects of her bounty. *In re Washington's Estate,* 212 S.C. 379, 46 S.E.2d 287. Further, the "capacity to know or understand, rather than the actual knowledge or understanding, is sufficient." 94 C.J.S. *Wills* § 15(c) (1956).

Under the Probate Code, an order determining that a basis for appointment of a conservator or other protective order exists has no effect on the capacity of the protected person, except to the extent the order affects his estate or affairs. S.C.Code Ann. § 62–5–408(4) (1987). The Code also addresses the applicable burden of proof in formal testacy proceedings: "Proponents of a will have the burden of establishing prima facie proof of due execution in all cases and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing undue influence, fraud, duress, mistake, revocation, or lack of testamentary intent or capacity." S.C.Code Ann. § 62–3–407 (Supp.1996).

As was stated in *Hellams v. Ross,* 268 S.C. 284, 290, 233 S.E.2d 98, 101 (1977):

The fact alone that the testator disposed of property contrary to what others usually consider fair is not sufficient to declare his will void. This principle is thus stated in *Matheson v. Matheson,* 125 S.C. 165, 171, 118 S.E. 312, 313: "The right to make a will carries with it the right to disregard what the world considers a fair disposition of property. In the case of *Lee's Heirs v. Lee's Executors,* 4

McCord 183, 17 Am.Dec. 722 [1827], we find: "That a will is unjust to one's relations is no legal reason that it should be considered an irrational act. The law puts no restrictions upon a man's right to dispose of his property in any way his partialities, or pride, or caprice may prompt him'."

In *Lee's Heirs v. Lee's Executors*, the Supreme Court held that eccentricity, however great, is not sufficient to invalidate a will, and the mind is presumed to be sound until the contrary is clearly proved. The court in this instance noted Lee was generally disturbed with a strange belief in witches, devils, and evil spirits, which he fancied continually worried him; wore unusual clothes; slept in a hollow log; and exhibited other extravagancies. However, the court found he was able in other respects to manage his affairs. The court noted to avoid a will for insanity, insanity at the time of execution of the will must be shown. Further, even if a will is unjust to one's family, there is no legal reason it should be considered an irrational act.

 The degree of capacity necessary for the execution of a will is less than that needed for the execution of a contract. *McCollum v. Banks*, 213 S.C. 476, 50 S.E.2d 199 (1948). Indeed, even an insane person may execute a will if it is done during a sane interval, and a prior determination of insanity is not conclusive. *Id.* As the court noted in *McCollum:*

[T]he well established general rule [is] that ordinarily one need not have full mental contractual capacity in order to make a valid will; the criteria are different. *Kirkwood v. Gordon,* 7 Rich. 474, 62 Am.Dec. 418; *Gable v. Rauch,* 50 S.C. 95, 27 S.E. 555; *Matheson v. Matheson,* 125 S.C. 165, 118 S.E. 312. It is said in the note in 27 L.R.A., N.S., at page 54, with digests of many sustaining authorities, as follows: "The rule generally adopted is that a lower degree of capacity than is necessary for the execution of a deed or contract will suffice for the making of a will."

*Id.* at 483–84, 50 S.E.2d at 200.

 After reviewing the record, we find the circuit court properly determined there was evidence to support the probate court's finding Mrs. Weeks possessed the necessary testamentary capacity to execute the 1989 will. Although she

made some erroneous statements concerning the exact extent of her estate, there is absolutely no evidence in the record that she was insane or suffered any sort of mental illness; rather, she was an 81–year–old woman experiencing a gradual, but irreversible, decline in her mental faculties due to the effects of aging. *See* 94 C.J.S. *Wills* § 27(a) (1956) ("Not every weakness incident to the ravages of age unfits a person for making a will. So, an aged person is not incapacitated by failing or defective memory, or partial loss of memory, absent-mindedness, nervousness, failure to recognize old friends, relatives, or members of the testator's family, inability to recognize acquaintances, a liking for dwelling on happenings of the past, pain and suffering, vacillating judgment, childishness, untidy habits, slovenliness or untidyness [sic] in dress, eccentricities or peculiarities, as in habit or speech, even though they may indicate a failing mentality, or even delusions or hallucinations if they do not affect the execution of the will. . . .").

Further, Mrs. Weeks did emphatically make known her wishes that her two daughters receive the bulk of her estate. As noted above, the appointment of a personal guardian and conservators for her property does not automatically mean she lacked testamentary capacity. *See* 94 C.J.S. *Wills* § 20 (1956) ("A person is not incompetent to make a will because he has been adjudicated to be of unsound mind, or insane, or has been confined in an institution for the insane. This is true where a person has been adjudicated to be incapable of managing his property, or handling his affairs, whether the adjudication of incompetency precedes or follows the execution of the will. It is also true where a guardian or conservator of one's person or estate has been appointed, in the absence of a controlling statute, and unless the order appointing the guardian is based on an express finding of some mental defect inconsistent with the possession of the capacity required for the execution of a will. . . .").

In this case, the probate court noted, *inter alia,* the following circumstances in concluding the 1989 will was valid: the 1989 order appointing a guardian and co-conservators found Mrs. Weeks was only "partially incapacitated" and required the conservators to consult with Mrs. Weeks in making any major decisions; one of the court-appointed examiners from the guardianship/conservatorship proceeding, Dr. Fletcher, specifically stated although he believed Mrs. Weeks needed

guidance in handling her day-to-day business affairs, she was capable of making major decisions concerning her property and was competent to make a will; Mrs. Weeks understood and explained at the time of execution of the will she was leaving her son the sum of one dollar ($1.00) to indicate she was aware of his existence, but specifically wished to disinherit him. Accordingly, we hold the circuit court did not err in finding there was evidence to support the probate court's determination Mrs. Weeks had capacity to execute the 1989 will.

## CONCLUSION

For the foregoing reasons, we hold Alice W. Weeks possessed the requisite testamentary capacity at the time of the execution of her will dated August 15, 1989. We affirm the circuit court ruling holding the 1989 will was valid.

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.