THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Estate of Laura J. Mims and Shelia Hood, Respondents,
 
 
 

v.

 
 
 
 Alta Ruth Robinson, Appellant.
 
 
 

Appeal From Charleston County
 Thomas L. Hughston, Jr., Circuit Court Judge

Unpublished Opinion No.  2007-UP-008
Submitted January 1, 2007  Filed January 11, 2007

AFFIRMED

 
 
 
 Eduardo Kelvin Curry, of Charleston, for Appellant.
 Sherry Bingley Crummey,  for Respondents.
 
 
 

PER CURIAM:  This appeal arises from a formal testacy proceeding to invalidate a will.  The circuit court affirmed an order of the probate court declaring the will at issue to be null and void.  Alta Ruth Robinson, the proponent of the will, appeals to this court.  We affirm.[1] 
FACTS AND PROCEDURAL HISTORY
The decedent, Laura J. Mims, died on January 23, 2003.  On or about January 27, 2003, respondent Shelia Hood presented to the Charleston County Probate Court a will dated March 2, 1999, naming Hood as the personal representative of Mimss estate as well as a devisee.  Shortly thereafter, on or about February 4, 2003, Robinson presented to the probate court a will dated January 22, 2000.  The second will named Robinson as the personal representative of Mimss estate and as the principal beneficiary.
Hood filed this action on July 30, 2003, after the probate court decided to probate the will Robinson had presented instead of the 1999 will.  Hoods complaint alleged (1) execution of the 2000 will was procured by fraud; (2) Mims never signed the instrument; (3) the will was not properly witnessed; and (4) the notarization was forged.  Hood requested revocation of the probate of the 2000 will, admission of the 1999 will to probate in solemn form, and an order that Robinson refrain from exercising any power of administration except as necessary to preserve the estate or as otherwise directed by the court.    
A hearing in the matter took place on February 19, 2004.  On July 9, 2004, the probate judge signed an order invalidating the 2000 will for several reasons including (1) concern that Mims did not know the content of the 2000 will; (2) questionable circumstances regarding the notarys signature; (3) disagreement between Robinsons witnesses regarding the individuals present at the signing of the will; (4) an apparent misspelling of Mimss name in the first signature line of the will; (5) a discrepancy between the name of a witness who signed the will and the corresponding name typed on the document; and (6) the fact that the will was allegedly signed at Mimss home on a Saturday.  In conclusion, the probate court held the authenticity of the entire January 22, 2000 will was suspect based on [t]he combination of . . . errors in this one document without any credible explanations offered by the proponents of the will.
Robinson appealed to the circuit court, which heard arguments of counsel on December 13, 2004.  By written order dated April 26, 2005, the circuit court affirmed the probate courts decision.  On May 9, 2005, Robinson moved under Rule 59(e), SCRCP, to alter or amend the circuit courts order.  Following the denial of this motion, Robinson filed this appeal.
DISCUSSION
1.  We disagree with Robinsons assertions of error in the findings by the probate court and the circuit court that Mims did not know the contents of the 2000 will.
Generally, will contests are actions at law.[2]  In such cases, both this court and the circuit court, when sitting as an appellate court in the matter, will uphold the findings by the probate court if they are supported by any evidence.[3]  
We agree with the circuit courts determination that the record contains evidence that supports the probate courts determination that Mims did not know the contents of the 2000 will when she signed it.  Charles Drayton, a non-lawyer and funeral home employee who claimed to have drafted the instrument, testified Mims instructed him she wished to have her estate divided among her niece [i.e. Robinson] and nephews; however, the will on its face designates Robinson as the sole beneficiary, with the nephews taking in succession only if the others failed to survive.  Moreover, it appears from Draytons testimony that he did not read the will to Mims and, although Mims allegedly took ten minutes to sign it, Drayton was unable to verify that he saw her reading the document.  Drayton then acknowledged that he took the original will with him, and there is no evidence suggesting he gave a copy to Mims or anyone else.
2.  As to Robinsons assertions of error regarding the determinations that the notarys testimony was unclear as to whether she in fact had notarized the 2000 will, we find no reversible error.  Although, as Robinson points out in her brief, defects in notarization are not necessarily fatal to the proper execution of a will, the will in this case was invalidated because of indications that the decedent did not know its contents.
3.  Finally, we disagree with Robinsons argument that the probate court improperly shifted the burden of proof to her.  In support of her position, Robinson suggests that, because Mims allegedly executed the will in question more than three years before she died, she had the opportunity to revoke or change it.  There is no evidence, however, that Mims was provided a copy of the 2000 will or was otherwise alerted to the discrepancy between her instructions to Drayton regarding the disposition of her estate and the actual provisions in the will.  Moreover, Drayton, even though he never testified that he was an attorney or had expertise in drafting wills, had assumed the role of a legal professional.[4]  Absent evidence to the contrary, it was reasonable for Mims to assume he had drafted the will according to her specifications.[5]
AFFIRMED.
GOOLSBY, STILWELL, and SHORT, JJ., concur.

[1]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.  We further note that, although under Rule 208(4), SCACR, this court may take such action as it deems proper because Respondents have not filed a brief in this appeal, we have not found any error that would warrant reversing the decision of the circuit court. 
[2]  Estate of Cumbee v. Cumbee, 333 S.C. 664, 670, 511 S.E.2d 390, 393 (Ct. App. 1999).
[3]  See Estate of Weeks v. Drawdy, 329 S.C. 251, 261, 495 S.E.2d 454, 460 (Ct. App. 1997) (stating the circuit court, when sitting as an appellate court, and the court of appeals use the same standard of review and both should uphold a finding by the probate court in a law case if it is supported by any evidence in the record).
[4]  See State v. Buyers Serv. Co., 292 S.C. 426, 431, 357 S.E.2d 15, 18 (1987) (The reason preparation of instruments by lay persons must be held to constitute the unauthorized practice of law is . . . for the protection of the public from the potentially severe economic and emotional consequences which may flow from erroneous advice given by persons untrained in the law.); In re Duncan, 83 S.C. 186, 189, 69 S.E. 210, 211 (1909) (holding the practice of law includes the preparation of legal instructions of all kinds).
[5]  Cf. True v. Monteith, 327 S.C. 116, 120, 489 S.E.2d 615, 617 (1997) ([A]bsent other facts, the client should be able to rely on the attorneys advice and should be able to follow this advice without fear the attorney is not acting in the clients best interest.).