## 19688

Irene S. HARRIS, Respondent, v. Marion BURNSIDE and Harriett Burnside, d/b/a Marion Burnside, Appellants

(199 S. E. (2d) 65)

*Messrs. Burnside and Roof,* of Columbia, *for Appellants,* cite:

*Thomas H. Curlee, Jr., Esq., of Lourie, Draine & Curlee,* Columbia, *for Respondent,* cites:

*Messrs. Burnside and Roof,* of Columbia, *for Appellants,* in Reply.

September 4, 1973.

BUSSEY, Justice:

In this *tort* action arising out of a bailment transaction the plaintiff-respondent sought to recover actual and puni-

tive damages from the defendants-appellants Burnside for alleged negligence and willfulness in the storage and repair of plaintiff's 1968 Chevrolet automobile. Plaintiff obtained a jury verdict for actual damages in the amount of $1,200.00, and punitive damages in the amount of $7,500.00. Defendants timely, but unsuccessfully, moved for a direct verdict; for a directed verdict as to punitive damages and for judgment *non obstante veredicto,* and now appeal.

It is, of course, elementary, that in considering defendant's motions for a directed verdict, all of the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. While there are, naturally, conflicts in the evidence, we proceed to review the evidence and state the facts in the light of such elementary proposition of law.

The plaintiff lived near Gadsden, South Carolina, and had for many years been employed at the laundry at Fort Jackson, South Carolina, some twenty-one miles distant from her home. On May 5, 1968, she acquired a new, fully equipped Impala Chevrolet automobile. The defendants, who will be collectively referred to as Burnside, operated a Plymouth automobile dealership agency on the outskirts of Columbia. On July 9, 1968, plaintiff's new automobile was badly damaged in a collision which occurred in the vicinity of Burnside's garage, plaintiff's automobile at the time being operated by her son. An unsolicited Burnside wrecker was the first of three to arrive at the scene of the collision and being first, plaintiff's son consented for Burnside wrecker to tow his mother's car to Burnside's garage.

The following morning, July 10, plaintiff went to Burnside and asked to have her car released to Central Chevrolet Company for repair. Burnside's foreman admittedly urged plaintiff to leave the car with Burnside instead and assured her that although a Plymouth dealer, Burnside could do the repair work as well and as fast as Central Chevrolet, and that her car could be repaired by Burnside in approximately

three weeks. As the result of his persuasion, plaintiff consented to leave her car with Burnside and authorized it to proceed with repairs. Burnside, however, being advised that plaintiff had collision insurance, did not proceed until after obtaining the authorization of her insurer in addition to the authorization of plaintiff.

The record would indicate the plaintiff to be a person of limited education and it is not at all clear that she was told, or if told, understood that Burnside was waiting for the insurer's authorization. It is admitted, however, that as an inducement to leave the car with Burnside she was told she would get it back repaired in about three weeks. Plaintiff promptly reported her loss to her insurer on July 10, but was not contacted by an adjuster for approximately a week, and it was not until August 5 that the insurer authorized Burnside to proceed with the repair. The delay was, at least in part, caused by haggling between Burnside and the adjuster as to the cost of the repairs, the plaintiff, at least inferentially, knowing nothing about what was going on between Burnside and the adjuster.

Burnside had none of the necessary parts and undertook to acquire them through a Chevrolet agency in Newberry, and some of them had to come from Atlanta or elsewhere. Strictly for its own benefit, Burnside elected not to proceed with any part of the repair work until all parts were on hand and immediately available. Plaintiff did not obtain her car back from Burnside, supposedly repaired, until on or about December 26, 1968. In the meantime, her car, over her protest, was left for a long time outside in the weather on Burnside's lot. She checked on it from time to time and was repeatedly assured that her car would be ready in a few days. After the car had been in Burnside's possession for quite some time, she made another effort to get her car away for the purpose of taking it to Central Chevrolet, but was told that they had already started to work on it and she could not move it. While stored upon Burnside's lot, the

wheels and tires were stolen therefrom, replaced by Burnside and charged to plaintiff. Burnside's lot was fenced but upon a principal highway, with no police protection, save an occasional visit by a deputy sheriff, and no night watchman maintained, even though Burnside was aware of previous thefts in the area.

Plaintiff's car sustained weather damage to the interior decor and upholstery, as a result of being stored over a long period of time outside with no protection from the elements, such damage not being repaired by Burnside. She expended additional sums for repairs which were not completed. In early 1969, plaintiff sustained a total loss of her car in another collision, following which she was compelled to settle with her insurer on a depreciated value due to the condition in which her car was returned by Burnside.

There was a duty upon Burnside to exercise due care in the safekeeping of plaintiff's automobile, *Fortner v. Carnes,* 258 S. C. 455, 189 S. E. (2d) 24, and in the repair of her automobile, *Edwards v. Charleston Sheet Metal,* 253 S. C. 537, 172 S. E. (2d) 120. From the foregoing synopsis of the highlights of the evidence, stated in the light most favorable to the plaintiff, it is readily inferable that there was a breach of duty by Burnside in both of these particulars, and, moreover, that such breach was in conscious, reckless disregard of the rights of the plaintiff. It follows that Burnside's motions were properly overruled.

Burnside recognizes that a bailment contract creates a duty of care, the breach of which constitutes a tort, but seems to argue that since the action is grounded in or arises out of a contractual relationship, no punitive damages may be recoverable. Although we are unaware of any tort case in that State, arising out of a bailment, wherein punitive damages have been allowed, we do not regard such contention as sound. In 8 Am. Jur. (2d) 1218, Bailments, Sec. 331, we find the following:

"If the conversion was in reckless and wanton disregard of the rights of the owner, a jury may, in its sound discretion allow exemplary damages, although the action is in trover."

Where the act or acts of the bailee clearly amount to a conversion, the quoted statement is in clear accord with the weight of authority elsewhere, as well as our own decisions dealing with the conversion of personal property. See cases collected in West's South Carolina Digest, Trover and Conversion, Key No. 60.

From West's South Carolina Digest, Bailments, Key No. 16, we quote the following:

"If the thing bailed is used in a different manner, or for a different purpose, or for a longer time, than was agreed by the parties, the hirer is guilty of a conversion and is answerable for all damages, and even for a loss which due care could not have prevented." See *Richardson v. Dingle,* 11 Rich. 405; *Duncan v. S. C. R. Co.,* 2 Rich. 613; *McLauchlin v. Lomas,* 3 Strob. 85; *Abrahams & Co. v. Southwestern R. Bank,* 1 S. C. 441, 7 Am. Rep. 33.

While the breaches of duty on the part of Burnside in the instant case may not constitute a conversion of the plaintiff's property in the completely literal sense of the term "conversion", the foregoing authorities convince us that there is no sound reason for making a distinction between a willful tort arising out of a bailment transaction and any other willful tort insofar as recovery of exemplary damages is concerned. It is of course elementary in this jurisdiction that punitive damages are allowable in tort actions, not only as a punishment for wrong, but as a vindication of private rights when it is proved that such have been wantonly, willfully or maliciously violated. West's South Carolina Digest, Damages, Key No. 87 *et seq.*

It is contended that the verdict for actual damages in the amount of $1,200.00 does not have sufficient support in the evidence. The evidence reflects that

plaintiff expended some $400.00 for essential travel while out of the use of her car and that much of the time she was without needed transportation. Somewhat more than $200-.00 damage was incurred as a result of the wheels and tires being stolen from her car, such being replaced by Burnside but charged to the plaintiff. She expended money to accomplish repair not properly or fully performed by Burnside, but was left with an automobile which was depreciated in value as a result of its handling by Burnside.

Relying on *Scott v. Southern Ry.,* 231 S. C. 28, 97 S. E. (2d) 73, plaintiff unsucessfully offered evidence as to the rental value of her car, and now by way of an additional sustaining ground asserts that there was error on the part of the trial judge in excluding such evidence. We agree that His Honor was in error and should have permitted the evidence, but, independently, we conclude that the verdict for actual damages was adequately supported by the evidence which was admitted.

Finally, it is urged that the verdict for punitive damages was excessive. In the fairly recent case of *Hicks v. Herring,* 246 S. C. 429, 144 S. E. (2d) 151, numerous controlling precedents were cited and the principles governing our consideration of an allegedly excessive punitive damage verdict were clearly and succinctly set forth. A review of the instant record and all of circumstances reflected thereby, in the light of such principles, fails to indicate to this Court any reason why it should interfere with the verdict for punitive damages.

We deem all exceptions of the appellants to be without merit and the judgment below is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.