2406

James DIXON, Respondent v. BESCO ENGINEERING, INC., Appellant.
(463 S.E. (2d) 636)

Court of Appeals

176

*Paul E. Tinkler* of *Wallace & Tinkler*, Charleston, *for appellant.*

*William J. Hamilton, III*, Charleston, *for respondent.*

Heard, Sept. 12, 1995.

Decided Oct. 30, 1995.

HOWELL, Chief Judge:

James Dixon, a former employee of Besco Engineering, Inc. (Besco), brought this action alleging Besco's negligence as a bailee caused the theft of Dixon's machinist tools. The judge entered a default against Besco because it failed to answer Dixon's complaint until over seventy-five days after the extended time agreed upon by the parties. In the subsequent damages hearing, the circuit judge granted Dixon $25,060.00 actual damages based on the value of the lost tools and lost wages.

## I. Default Judgment

Dixon's summons and complaint were properly served on Besco's registered agent in Charleston on December 3, 1992. The pleadings were forwarded to Mr. John Thomas, Besco's employee in charge of responding to the complaint. Mr. Thomas sent the complaint to Mr. Kent, Besco's attorney in Jacksonville, Florida, on December 17, 1992. The next day, Mr. Kent received a fifteen-day extension from Dixon's attorney. The attorneys agreed to extend the time for filing an answer until January 4, 1993. Mr. Kent then advised Mr. Thomas to secure South Carolina counsel to handle the matter and forwarded him a copy of the extension letter which Mr. Thomas

received on December 22, 1992.

Mr. Thomas admitted he overlooked the January 4 deadline in the letter, and believed Besco had an unlimited extension of time to respond to Dixon's complaint. As a result, Mr. Thomas did not begin contacting lawyers in Charleston until December 30, 1992. He waited until February 4 for a response from the first lawyer who declined the case. On February 24, a second lawyer declined to represent appellant. Finally, on March 9, Besco's current attorney agreed to handle the case and filed Besco's answer on march 19, 1993. The special judge granted Dixon's motion for default.

Besco argues the judge erred in entering the default judgment because Besco established good cause under Rule 55(c), SCRCP. We disagree. Rule 55(c), provides:

(c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

This section is liberally construed to promote justice and dispose of cases on the merits. However, the decision whether or not to grant relief from an entry of default is solely within the discretion of the trial judge. *Ricks v. Weinrauch*, 293 S.C. 372, 360 S.E. (2d) 535 (Ct. App. 1987).

Besco argues the entry of default should be reversed because the judge neglected to make specific findings of the factors enumerated in *Wham v. Shearson, Lehman Bros., Inc.*, 298 S.C. 462, 381 S.E. (2d) 499 (Ct. App. 1989). Besco failed to raise this issue to the judge in a Rule 59(e) motion. Issues on which the trial judge never ruled and which were not raised in a posttrial motion are not preserved for appeal. *Goddard v. Fairways Dev. Gen. Partnership*, 310 S.C. 408, 426 S.E. (2d) 828 (Ct. App. 1993). However, even if the issue had been properly preserved, we find it to be without merit. In *Wham*, this court found the master failed to apply the good cause standard, and erroneously applied the more rigorous excusable neglect standard used under Rule 60(b), SCRCP. Thus, this court remanded the case for the master to apply the correct standard. In directing the master on remand, this court stated "the master . . . shall consider the following factors: (1) the timing of Shearson Lehman's mo-

tion for relief; (2) whether Shearson Lehman has a meritorious defense; and (3) the degree of prejudice to Wham if relief is granted." *Id.* at 465, 381 S.E. (2d) at 501-02. *See also Top Value Homes, Inc. v. Harden,* — S.C. —, 460 S.E. (2d) 427 (Ct. App. 1995) (this court remanded an action subject to the good cause standard in which the master applied the excusable neglect standard, and directed the master to consider the *Wham* factors). Besco argues because the judge failed to specifically enumerate the *Wham* factors, he abused his discretion in entering the default judgment.

We decline to read *Wham* as requiring the trial judge to make specific findings of these factors. The trial judge will not be reversed for failing to make specific findings of fact on the record for each factor if there is sufficient evidentiary support on the record for the finding of the lack of good cause. *Cf. Blumberg v. Nealco,* 310 S.C. 492, 427 S.E. (2d) 659 (1993) (when an award of attorney's fees is requested and authorized by statute, the court should make specific findings of fact on the record for each factor; however, the court will not be reversed for failing to do so if there is sufficient evidentiary support on the record for each factor); *Noisette v. Ismail,* 304 S.C. 56, 403 S.E. (2d) 122 (1991) (requirement that trial court without a jury find the facts specially and state separately its conclusions of law under Rule 52(a), SCRCP, is directory; noncompliance alone does not invalidate the judgment as long as the trial court substantially complies with Rule 52(a) and adequately states the basis for the result it reaches). We have reviewed the record and agree with the judge that Besco failed to establish entitlement to relief under Rule 55(c).

## II. Damages for Lost Income

Besco argues the circuit judge erred in awarding Dixon damages for lost income. We disagree. A bailment contract imposes upon the bailee a duty of care, the breach of which constitutes a tort. *Harris v. Burnside,* 261 S.C. 190, 199 S.E. (2d) 65 (1973). In a bailment action alleging the tort of negligence, the bailor is entitled to be compensated for all losses that are the natural consequence and proximate result of the bailee's negligence. 8 Am. Jur. (2d) *Bailments* § 346 (1980). Damages are proximately caused if they are the fore-

seeable result of the defendant's tortious act. *Young v. Tide Craft, Inc.*, 270 S.C 453, 242 S.E. (2d) 671 (1978). Proximate cause is a question of fact. *Parr v. Gaines*, 309 S.C. 477, 424 S.E. (2d) 515 (Ct. App. 1992).

In defaulting, Besco admitted its negligence was the proximate cause of Dixon's loss of tools when it failed to take additional measures to secure the shop after knowing its locks were inadequate and it was an attractive target for a burglary. Besco further admitted, through the default, that Dixon's lack of tools led to the decision to terminate him and his loss of tools made it difficult for Dixon to obtain work in his field. Based on the above admissions and the nature of Dixon's job, the circuit judge found Besco's negligence proximately caused Dixon's lost income. The findings of fact of the trial judge will not be disturbed on appeal unless found to be without evidence which reasonably supports the judge's findings. *Shepard v. S.C. Dep't of Corrections*, 299 S.C. 370, 385 S.E. (2d) 35 (Ct. App. 1989). We hold there is ample evidence in the record to support the trial judge's award.

Besco further argues Dixon's damages for lost income should be limited to the damages incurred prior to his employment with Fabtech. Besco contends Dixon's employment at Fabtech was an intervening act which severed the causal link between Besco's negligence and Dixon's injury. We disagree. After his termination from Besco, Dixon was employed for four to six weeks by Fabtech. Dixon testified Fabtech terminated his employment because he did not own his own tools. The circuit court reduced Dixon's claim for lost income by the wages he earned from Fabtech, but awarded Dixon lost income for the period after he was employed at Fabtech until he found another job in his field.

For an intervening act to break the causal link and insulate the tortfeasor from further liability, the intervening act must be unforeseeable. *Matthews v. Porter*, 239 S.C. 620, 124 S.E. (2d) 321 (1962). Dixon testified the industry expected machinists to provide their own tools. Given the industry standards, it is not unforeseeable Dixon would be unable to remain employed without tools. Whether an intervening act breaks the causal connection is a question for the fact finder which will not be disturbed on appeal unless found to be without evidence which reasonably supports the finding.

*Bethea v. Pedro Land, Inc.*, 290 S.C. 341, 350 S.E. (2d) 392 (Ct. App. 1986); *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976). We find the record supports the circuit judge's finding that Dixon's brief employment at Fabtech did not break the causal link between Besco's negligence and Dixon's injury.

### III. Valuation of Lost Tools

Besco alleges the circuit judge erred in awarding damages for the value of Dixon's lost tools because Dixon failed to provide competent evidence of valuation. We disagree. Dixon testified he had accumulated approximately $14,000.00 worth of tools in 1991. He further stated, without objection, it would cost him $8,305.98 to replace his tools with new tools. Dixon conceded it would cost ten to fifteen percent less if he could replace the tools with used tools.

The circuit judge found the fair market value of the tools when they were stolen was $7,060.00, and awarded this amount as damages. A property owner, familiar with his property and its value, may give his estimate as to its value, even though he is not otherwise an expert. *Walton v. Walton*, 282 S.C. 165, 318 S.E. (2d) 14 (1984). The fact finder must determine the weight to be accorded the testimony of the witnesses, and accept or reject their valuations. *S.C. State Highway Dep't. v. Grant*, 265 S.C. 28, 216 S.E. (2d) 758 (1975). Because the amount awarded was comparable to the testimony, we find no abuse of discretion.

### IV. Collateral Source Rule

Besco argues the circuit judge erred when he applied the collateral source rule and refused to reduce Dixon's award of damages by the amount of Dixon's unemployment compensation. We disagree. The collateral source rule prevents a tortfeasor from receiving a reduction in damages due to payments or compensation received by the injured person from a source wholly independent of the tortfeasor. *Johnston v. Aiken Auto Parts*, 311 S.C. 285, 428 S.E. (2d) 737 (Ct. App. 1993). Under the collateral source rule, the tortfeasor cannot take advantage of the contracts between the injured party and third persons. *Id.*

In applying the collateral source rule, South Carolina allows the plaintiff the benefit of both gratuitous benefits and nongratuitous benefits arising from employment, insurance, or other contractual agreements. *Id.* A benefit that is directed to the injured party should not be shifted to result in a windfall for the tortfeasor. 22 Am. Jur. (2d) *Damages* § 566 (1988). It is the tortfeasor's responsibility to compensate the injured party for all the harm that he causes, not the net loss the injured party receives. *Johnston, supra.*

Besco contends the collateral source rule does not apply in this case because the unemployment compensation is not a source wholly independent from Besco because they contributed to the unemployment fund as Dixon's employer. We have not found a South Carolina case that directly resolves this issue. We hold the collateral source rule applies in this case. Numerous courts have addressed this issue and concluded the collateral source rule applies to unemployment benefits. In *Potvin v. Seven Elms, Inc.,* the Maine Supreme Court held the collateral source rule applied although Seven Elms, the employer, contributed on behalf of Potvin to the unemployment compensation fund. 628 A. (2d) 115 (Me. 1993). The court in *Potvin* stated:

> [E]mployers do not directly pay benefits to their former employees. Rather, employers are required to pay an amount determined by statute into the unemployment compensation fund. . . . Only a fraction of the benefits an employee receives is attributable to the contributions of the former employer. Notwithstanding the fact that Seven Elms contributes to the fund and that its experience rating record will be adversely affected, there is an insufficient nexus between its direct expense and the actual benefits Potvin received to conclude that the payments she received came from Seven Elms.

628 A. (2d) at 116. Similarly, in *Hunter v. Allis-Chalmers Corp.,* 797 F. (2d) 1417 (7th Cir. 1986) the court held:

> Because unemployment insurance is only partially experience-related, workers and employers in industries that experience little unemployment end up involuntarily subsidizing workers and employers in industries that experience much unemployment. Only in a most artificial sense,

therefore, can Hunter be said to have paid for these benefits when he was working for Allis-Chalmers; nor do workers or employers who subsidize the unemployed intend to confer windfall benefits . . . [T]he ultimate payors of the benefits are a diffuse and unascertainable group, . . . so the choice seems to be between conferring a windfall on Allis-Chalmers and a windfall on Hunter. As the victim of Allis-Chalmers' wrongdoing, Hunter is the logical choice.

*Id.* at 1429. *See also Technical Computer Services, Inc. v. Buckley,* 844 P. (2d) 1249 (Colo. Ct. App. 1992), *cert. denied* (Feb. 16, 1993); *Hayes v. Trulock,* 51 Wash. App. 795, 755 P. (2d) 830 (1988).

We find further support for our holding from our legislature. S.C. Code Ann. § 41-31-20 (1986) of the South Carolina Employment Security Law states "nothing in Chapters 27 through 41 of this Title shall be construed to grant any employer or individual in his service prior claims or rights to the amounts paid by him into the fund either on his behalf or on behalf of such individuals." Thus, Besco is not entitled to claim a right of setoff out of funds paid by Besco to the State Employment Commission. *Cf. McLeod v. South Carolina Ins. Co.,* 272 S.C. 254, 251 S.E. (2d) 193 (1979) (unemployment benefits shall not be set off against worker's compensation benefits).

Affirmed.

SHAW and CONNOR, JJ., concur.