664 S.E.2d 487

**Yoko Kim MELTON, Respondent,**

v.

**Chong OLENIK a/k/a Chong Son Kim, Appellant.**

**No. 4418.**

Court of Appeals of South Carolina.

Heard April 16, 2008.
Decided June 20, 2008.

David Christopher Shea and Rebecca Guental Fulmer, both of Columbia, for Appellant.

Stephen D. Schusterman, of Rock Hill, for Respondent.

PIEPER, J.:

Chong Son Kim (Kim) appeals the circuit court's order denying her motion to set aside entry of default and denying relief from default judgment. We reverse in part and remand for further proceedings.

## FACTS

Yoko Kim Melton (Melton) and Kim entered into an agreement in which Melton would purchase a one-half interest in Kim's massage therapy business, "Our Place." [1] The agreement, signed by both parties on January 9, 2002, indicates a purchase price of $30,000, due in full within one year of the

---

1. There is some discrepancy as to what business Melton was purchasing. Melton describes the business as being located in Columbia, South

date of the agreement.[2]   Melton was to work in the business and learn the operations for one year at which point Kim would turn over the one-half interest to Melton.[3]   However, at the end of the year, Kim did not turn over the one-half interest to Melton.

Melton filed a summons and complaint and served Kim on November 30, 2005.   Kim failed to answer.[4]   On March 1, 2006, Melton filed a motion seeking entry of default and a default judgment in the amount of $50,000.   Default was entered against Kim on June 6, 2006, but the court continued the damages hearing, expressing concern that Kim had not been properly served with notice of the hearing.   A damages hearing was scheduled for July 19, 2006, and Kim was served notice of the damages hearing.   Kim filed a motion to set aside default and, with Melton's consent, the damages hearing was continued.   Kim moved to set aside default for good cause, inadvertence, and excusable neglect on the grounds that:   (a) she had only recently become aware of the suit against her and no hearing on damages had been held;   (b) she had a meritorious defense;   and (c) there would be no prejudice to Melton.

A hearing on Kim's motion was held on November 13, 2006.   The court denied the motion to set aside the entry of default and immediately proceeded to hear Melton's testimony in support of her motion for default judgment.   Melton and Kim

Carolina, whereas Kim's Answer indicates the business was located in Augusta, Georgia.

2.   Melton's complaint and motion for default with attached affidavit allege a purchase price of $50,000.   Further, at trial Melton testified she was owed $50,000, but did not explain the discrepancy between the alleged $50,000 purchase price and the $30,000 purchase price indicated in the agreement.

3.   Again, there is some confusion as to what interest Melton agreed to purchase.   The agreement indicates Melton was to receive a one-half interest in the business, whereas Melton's affidavit indicates she was to receive full ownership of the business.

4.   Kim acknowledged receiving and signing for an envelope in November 2005, as she was on her way out of town to visit her ailing sister. She recalled placing the envelope in her purse which she alleged was subsequently stolen from her son's car.   She further explained she failed to look at the contents of the envelope before it was stolen.

are Korean and they both have a limited proficiency in the English language. As such, Melton requested the use of an interpreter she brought with her to the hearing. Kim objected to the use of that particular interpreter and requested the use of a joint court interpreter.[5] The court performed a voir dire of the interpreter to determine her experience. After the voir dire, the court asked if there was any objection. Kim objected to the interpreter and requested a South Carolina court certified interpreter. The court commenced the hearing without any interpreter.

On the basis of Melton's testimony, the court found Melton was entitled to a default judgment in the amount of $50,000. Kim filed a Rule 59(e) motion, arguing default should be set aside, or in the alternative, the default judgment should be vacated and she should be granted a new hearing on damages with a qualified interpreter. The court summarily denied the motion. This appeal follows.[6]

## LAW/ANALYSIS

Kim argues the circuit court erred in denying relief from the default judgment. We agree.

---

5. Melton agreed to the use of a joint court interpreter.

6. Kim did not actually seek relief under Rule 60, SCRCP, to set aside default judgment, as opposed to the entry of default under SCRCP 55(c). However, Kim raised the same grounds in a Rule 59 motion as would be raised under Rule 60. Notwithstanding, we need not resolve any issue raised by this pleading distinction since Kim actually appeared at the damages hearing and preserved her grounds for appeal as to the interpreter. Moreover, Kim filed an earlier Rule 55(c) motion which was denied by the court. Since the Rule 59(e) motion properly requested the court to address its lack of findings pursuant to the interpreter statute, it was the proper procedural mechanism to use. The remainder of the Rule 59 motion pertaining to the default issue was more properly characterized as a Rule 60(b) motion, SCRCP. We are free to treat the motion based upon its substance and effect as opposed to how it was captioned. *See Mickle v. Blackmon*, 255 S.C. 136, 140, 177 S.E.2d 548, 549 (1970). While recharacterization could be problematic as to the timeliness of an appeal since Rule 60 does not toll the filing of an appeal, we do not see any jurisdictional bar where part of the relief requested is proper pursuant to Rule 59. In any event, the appellant asserts she did not receive notice of the entry of judgment until January 8, 2007. Since the appeal was filed on February 6, 2007, we find the appeal is timely regardless of how the motion is characterized.

▋ The power to set aside a default judgment is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Mitchell Supply Co., Inc. v. Gaffney,* 297 S.C. 160, 162–63, 375 S.E.2d 321, 322–23 (Ct.App.1988). An abuse of discretion arises when the court issuing the order was controlled by an error of law or when the order, based upon factual conclusions, is without evidentiary support. *Goodson v. Am. Bankers Ins. Co. of Fla.,* 295 S.C. 400, 402, 368 S.E.2d 687, 689 (Ct.App.1988).

In the present case, Kim asserts the court erred in denying the motion to set aside the default judgment on the grounds that: (1) the evidence presented of Kim's inadvertence and excusable neglect justified relief under Rule 60(b)(1), SCRCP; (2) the court relied upon incompetent parol evidence and the court's subsequent award of damages is without evidentiary support and was controlled by an error of law; and (3) the court's refusal to accommodate her request for a qualified court interpreter violated statutory law and deprived her of equal access to justice and to the court proceedings.

▋ We first address the issue on appeal as to the request for an interpreter. Pursuant to Section 15–27–155(A) of the South Carolina Code (2005):

[W]henever a party or witness to a civil legal proceeding does not sufficiently speak the English language to testify, the court may appoint a qualified interpreter to interpret the proceedings and the testimony of the party or witness. However, the court may waive the use of a qualified interpreter if the court finds that it is not necessary for the fulfillment of justice. The court *must* first make a finding on the record that the waiver of a qualified interpreter is in the best interest of the party or witness and that this action is in the best interest of justice.

(Emphasis added). In this case, both parties have limited English proficiency and expressed concern with a possible language barrier before the hearing. When Kim objected to the use of the interpreter Melton brought to the hearing, Melton agreed to an alternate qualified court interpreter. The court performed a voir dire of the interpreter to determine her experience and abilities, after which Kim renewed

the objection to the use of that particular interpreter. Kim requested a South Carolina qualified court interpreter but the court refused that request. Rather than proceeding with the interpreter Melton provided, the court held the damages hearing without the use of any interpreter. Before proceeding to the hearing, the court failed to make any findings under the statute that waiver of the use of a qualified interpreter was in the best interest of the party, or witness, or that it was in the best interest of justice. We find the court's decision to proceed without the use of a qualified interpreter without making any findings on the record that it was in the best interest of the party, witness, or justice was legal error.

Further, we find proceeding without the use of an interpreter prejudiced Kim. At the hearing, Melton attempted to explain the transaction and exchange of money. However, the testimony is confusing and at times incoherent, such that both attorneys and the judge often sought further clarification of Melton's statements. For example:

Q. (Melton's Attorney) You gave her $50,000?

A. (Melton): Yes

Q. Okay. And what were you supposed to get for that 50,000? What were you getting?

A. She go—she go sign the $30,000 contract promissory, and she gave me two check, two checks. One each check is $25, $25 a total of $50,000. She gave me check.

Q. Okay. Why did she give you two checks for $25,000 if you paid her 50,000?

A. Because we help a partner asked—she wanted $50,000. Then I'm thinking $50,000, she going to promise a contract. But she go lawyer office. She say $30,000. Why? I ask you, why $30,000? I don't trust her. That's why I want your check. Give it to me. Any time you don't give me help, partner, I want my money back.

Q. Okay. So that was in case you didn't get your half, if she didn't let you have your half?

A. She don't give it to me. She no money back, too.

Q. How did you give her the $50,000?

52

A. She—I give her money. She give me check, two checks. Mh-hmm (affirmative)

Q. Okay.

THE COURT: I don't think she understood the question.

Q. Okay.

THE COURT: Because I have the same question.

. . .

Q. You paid her $50,000?

A. Yes, sir.

Q. How did you give her the money? Was it in cash? Or was it a check? How did you give it to her?

A. Oh. I got something in the—the bank check and cash it, too. But she want, everything wanted cash. That's why I don't trust her, is I go to a lawyer office. It's a notarizer and helping making sure. That's why I want two checks, 25,000, 25,000, two checks. I needed this. Then she gave it to me.

At the close of Melton's direct examination her attorney states, "[y]our Honor, I don't—I—it may be that we need to get a translator if—I don't know if the Court is following what's going on. .I don't know that I can get any more detail because of the language barrier."

The following testimony was elicited during cross-examination of Melton:

Q. (Kim's Attorney) Yeah. What proof do you have that you gave her $50,000?

A. (Melton) They have a—it's a—I have a contract promise to pay her for that.

Q. Where is that?

A. Where is that? Okay. And two checks. And there is— one of them is $30,000. One year. It's a contract promise. And I give her 50,000. That's why, you know, she don't—she give—she—she a liar. So I don't trust her. I need the two check, $50,000. Mm-hmm (affirmative).

Q. You gave her a check for $50,000?

A. (Shakes head negatively).

Q. Did you give her cash?

A. No. She give me two check. Mm-hmm (affirmative).

The following testimony was further elicited:

Q. (Kim's Attorney) Okay. Well, ma'am, it goes back to my original question of, do you have any proof whatsoever that you actually gave her $50,000?

A. Because she wanted to have to share $50,000. Mm-hmm (affirmative).

THE COURT: Ma'am, let me—did you give her $50,000?

A. Yes, sir.

THE COURT: Cash?

A. She wanted cash. But it's a-everything had to prove money. Mm-hmm (affirmative).

THE COURT: Did you give her cash?

A. Yes. She wanted cash.

THE COURT: You gave her cash?

A. Yes.

Q. (Kim's Attorney) Ma'am, do you have any sort of withdrawal slip from your bank showing that you took out $50,000?

A. But I don't give her $50,000. She don't sign anything. She don't give me check.

. . .

Q. Do you have any way to prove that you gave her $50,000 in cash?

A. Yes, sir.

Q. What is that proof?

A. I have to talk?

Q. You're telling us that's your proof?

A. Yes. But I don't—I don't have to talk to you. Mm-hmm (affirmative).

Notwithstanding the contradictory statements and incoherent testimony of Melton and the lack of an interpreter to assist with the language barrier, the court ultimately ordered default judgment against Kim for $50,000. We find Melton's inability to convey the facts of the transaction during the

hearing, due to her limited English proficiency and the lack of an interpreter, prejudiced Kim and affected her ability to contest the damages.

Therefore, we find the court committed an error of law and thus abused its discretion in regard to the interpreter issue. We reverse and remand for a new damages hearing at which time the court shall direct that a qualified interpreter must be present or alternatively, the court must make the necessary findings of waiver under the statute.[7]

Kim also argues the circuit court erred in failing to set aside the entry of default as provided under Rule 55(c), SCRCP. Since we have already determined a remand is appropriate due to the interpreter issue, we also find a remand as to this issue is appropriate.

Under Rule 55(c) of the South Carolina Rules of Civil Procedure, a default may be set aside "for good cause shown." Rule 55(c) should be "liberally construed to promote justice and dispose of cases on the merits." *Bage v. Southeastern Roofing Co. of Spartanburg, Inc.*, 373 S.C. 457, 471, 646 S.E.2d 153, 160 (Ct.App.2007), *cert. granted* (Mar. 20, 2008). The decision whether to grant relief from an entry of default is solely within the sound discretion of the trial court. *Wham v. Shearson Lehman Bros., Inc.*, 298 S.C. 462, 465, 381

---

7. We recognize that counsel in civil cases will often arrange for an interpreter to be present. The trial court has the authority to direct that a litigant, especially a non-indigent litigant as found herein, provide for and compensate an interpreter. Moreover, the court is not limited to qualification only of an interpreter of choice by either one of the parties. The court may exercise its discretion in the management of a trial or hearing in such a manner as to proceed without multiple interpreters if fairness allows it to do so and no prejudice will arise. We leave these decisions to the trial court. Notwithstanding, absent a determination that an interpreter is not necessary, the court must make findings on waiver as required by the statute. The record herein indicates that an interpreter was necessary. The court did not base its decision on the failure of counsel to arrange for an interpreter or upon a finding that an interpreter was not necessary. Accordingly, the trial court should have either qualified the interpreter present and proceeded with that interpreter if qualified, or continued the proceeding with instructions to the parties to make the necessary arrangements; alternatively, the court should have made the findings provided by the statute as to waiver if the court determined the requirements for waiver were met.

S.E.2d 499, 501 (Ct.App.1989). On appeal, this court cannot substitute its judgment for that of the trial judge and will not disturb the trial court's decision absent a clear showing of abuse of discretion. *Ricks v. Weinrauch*, 293 S.C. 372, 374, 360 S.E.2d 535, 536 (Ct.App.1987). An abuse of discretion arises when the judge's decision was controlled by some error of law or lacks evidentiary support. *Boland v. S.C. Public Service Authority*, 281 S.C. 293, 295, 315 S.E.2d 143, 145 (Ct.App.1984).

In deciding whether to set aside an entry of default, the court should consider the following factors: (1) the timing of the motion for relief; (2) whether the defendant has a meritorious defense; and (3) the degree of prejudice to the plaintiff if relief is granted. *Wham*, 298 S.C. at 465, 381 S.E.2d at 501–02. Kim argues the court failed to weigh the *Wham* factors relevant to her motion. Specifically, Kim contends the only factor the court relied upon and cited was the timing of the motion for relief.

"[I]t is not necessary for the trial judge to make specific findings in regard to the factors enumerated in *Wham*. This court has held '[t]he trial judge will not be reversed for failing to make specific findings of fact on the record for each factor if there is sufficient evidentiary support in the record for the finding of the lack of good cause.'" *Bage*, 373 S.C. at 472, 646 S.E.2d at 161 (citing *Dixon v. Besco Engineering*, 320 S.C. 174, 179, 463 S.E.2d 636, 639 (Ct.App.1995)).

Arguably, in this case, over seven months elapsed between the time Kim was served with the summons and complaint and when she moved for relief. As indicated, Kim acknowledged the receipt of the envelope in November 2005, but never looked at the papers served upon her and claimed the envelope was placed in her purse and was subsequently stolen. On the other hand, Kim filed her motion a little over one month from being notified of the entry of default. We recognize both of these time periods are relevant to the consideration of the motion to set aside the entry of default. The trial judge cited in his order that "the defendant failed to file a motion for relief from the entry of default until some five (5) months after said entry and more than thirty (30) days after she received notification for the damages hearing." This factual finding is

clearly erroneous based upon the record. Default was entered on June 6, 2006, and mailed to the parties on June 7, 2006. The motion to set aside the entry of default was filed on July 17, 2006. We recognize this statement may have been a clerical error on the part of the court.

Although we review this matter under an abuse of discretion standard, we find a remand is appropriate to allow the court an opportunity to clarify or reconsider any findings on the motion to set aside the entry of default in light of the court's erroneous factual finding or clerical error. We simply cannot determine whether the trial court, in the exercise of its discretion, relied solely on an erroneous factual finding or whether that finding was merely a clerical error on the issue of delay and the court relied on the other *Wham* factors. Although we recognize the court is not required to make findings as to each factor, we find it problematic to determine here whether the judge properly exercised the discretion afforded under the law since the other *Wham* factors were not discussed. Since we already have determined a remand is appropriate as to the default judgment damages hearing due to the interpreter issue, we think fairness suggests that the judge also be afforded an opportunity to clarify or revisit this matter on remand since the judge is vested with the discretionary review in the first instance. The judge, upon making that determination, shall proceed in accordance with that determination as well as in accordance with the opinion herein.

Due to our disposition of these issues, we need not address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

We respectfully find the court's decision to proceed without the use of a qualified interpreter without making any findings on the record that it was in the best interest of the party, witness, or justice was legal error and we therefore reverse and remand as to this issue since we find prejudice to the appellant. We also remand for further proceedings on the

motion to set aside the entry of default due to the court's reliance on either an erroneous factual finding or a clerical error so that the court may be afforded the initial opportunity to exercise its discretion without consideration of this erroneous finding or clerical error. Once a redetermination of the motion to set aside the entry of default is made, the court shall proceed based on that determination and in accordance with our opinion. The decision of the circuit court is accordingly

**REVERSED IN PART AND REMANDED.**

HEARN, C.J., and GOOLSBY, A.J., concur.