682 S.E.2d 263

**Leola RICHARDSON as Personal Representative of the Estate of Dominick Richardson, Respondent,**

v.

**P.V., INC. and Harbor Inn, Inc., Appellants.**

**No. 26709.**

Supreme Court of South Carolina.

Heard May 28, 2009.

Decided Aug. 24, 2009.

Rehearing Denied Sept. 16, 2009.

---

2. We declined to grant certiorari as to this particular question.

J. Dwight Hudson and Mary A. Graham, both of Hudson Law Firm, of Myrtle Beach, for Appellants.

William Walker, Jr., of Walker & Morgan, of Lexington, for Respondent.

Chief Justice TOAL:

Respondent filed suit against Appellants following the drowning death of Respondent's son. Appellants failed to respond to the complaint and an entry of default was entered. The trial court denied Appellants' motion to lift the entry of default. This appeal follows.

### FACTUAL/PROCEDURAL BACKGROUND

On June 19, 2004, Dominick Richardson drowned in the swimming pool at Harbor Inn, a hotel owned by Jay Patidar located in Georgetown, South Carolina. Respondent filed survival and wrongful death actions arising out of the drowning. On May 12, 2005, a process server, Bobby Asbill, arrived at the Harbor Inn to serve the summons and complaint and asked the employee working at the desk, Demetria Cruel, if he could speak with the manager. Cruel informed Asbill that Patidar [1] was out of town for several days.

In her deposition, Cruel testified that Asbill told her that he was not coming back to the hotel and asked if she would call Patidar. She complied and gave the phone to Asbill, but testified that she could not hear their conversation. Cruel testified that after the phone conversation was finished, Asbill left the papers and walked out of the hotel. She later spoke with Patidar and informed him that Asbill left the papers. Patidar instructed Cruel to fax the summons and complaint to his insurance agent.

---

1. Patidar is the registered agent for Harbor Inn.

Asbill testified that when he spoke to Patidar on the phone, he identified himself and the reason for his visit. Patidar told him that he could leave the papers with Cruel or that he could come back when Patidar was there. Asbill also testified that he asked Cruel if Patidar gave her permission to accept the papers and she said "yes."

Finally, Patidar testified that he told Asbill that he would be back in four or five days, but that Asbill told him that he (Asbill) was not coming back. Patidar then told Asbill it was up to Asbill whether or not to leave the papers.

Appellants failed to answer the complaint and an entry of default was entered on June 24, 2005. Appellants subsequently moved to set aside the entry of default. The trial court denied the motion finding that service was effective, thereby conferring personal jurisdiction on the court, and that Appellants failed to show good cause to set aside the entry of default. This Court certified the appeal pursuant to Rule 204(b), SCACR, and Appellants present the following issues for review:

I.   Did the trial court err in ruling that service of process was effective and that the court therefore had personal jurisdiction over Appellants?

II.  Did the trial court err in ruling that Appellants failed to show good cause to set aside the entry of default?

## STANDARD OF REVIEW

The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the trial court. *Roberson v. S. Fin. of South Carolina, Inc.,* 365 S.C. 6, 9, 615 S.E.2d 112, 114 (2005). The trial court's decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion. *Id.*

## LAW/ANALYSIS

### I.   Service of Process

Appellants argue the trial court erred in finding service of process was effective. We disagree.

Service upon a corporation may be made "by delivering a copy of the summons and complaint to an officer, a

managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Rule 4(d)(3), SCRCP. Rule 4 serves at least two purposes: it confers personal jurisdiction on the court and assures the defendant of reasonable notice of the action. *Roche v. Young Bros., Inc. of Florence,* 318 S.C. 207, 209, 456 S.E.2d 897, 899 (1995). Exacting compliance with the rules is not required to effect service of process. *Id.*

Not every employee of a corporation is an agent of the corporation for the purposes of service of process. *See Roberson,* 365 S.C. at 11, 615 S.E.2d at 115 (holding that a clerical employee was not an agent authorized to accept service of process for the corporation). Whether an employee may accept service on behalf of a corporation depends on the authority the corporation conferred upon the employee. In order to determine whether an employee is an authorized agent, the court must look to the circumstances surrounding the relationship and find authority which is either express or implied from the type of relationship between the defendant and the alleged agent. *Moore v. Simpson,* 322 S.C. 518, 523, 473 S.E.2d 64, 67 (Ct.App.1996). While actual authority is expressly conferred upon the agent by the principal, apparent authority is when the principal knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority. *Roberson,* 365 S.C. at 10–11, 615 S.E.2d at 115.

In the instant case, even if Cruel did not have actual authority, we find that she had apparent authority to accept service of process. When Asbill initially entered the hotel's office, Cruel was the only employee present, which represented to third parties that she was in charge. Asbill testified that Patidar told him that he could leave the papers with Cruel or that he could come back. Patidar similarly testified that he told Asbill it was up to him whether to leave the papers. Under these facts, we find that Patidar knowingly permitted Cruel to exercise authority to accept service of process and further find that his manifestations to Asbill indicated that Cruel had such authority.

For these reasons, we hold that evidence in the record supports the trial court's finding that Cruel was authorized to

accept service. *Brown v. Carolina Emergency Physicians, P.A.,* 348 S.C. 569, 583, 560 S.E.2d 624, 631 (Ct.App.2001) (recognizing that the findings of the circuit court on factual issues arising on a motion to quash service of process for lack of jurisdiction are binding on the appellate court unless wholly unsupported by the evidence or controlled by error of law).

## II. Rule 55(c)

Appellants argue that the trial court erred in ruling that they failed to show good cause to set aside the entry of default. Specifically, Appellants claim that the insurance company's failure to respond was inadvertent and constitutes good cause to justify setting aside the entry of default. We disagree.

■ The standard for granting relief from an entry of default is good cause under Rule 55(c), SCRCP, while the standard is more rigorous for granting relief from a default judgment under Rule 60(b), SCRCP. *Sundown Operating Co., Inc. v. Intedge Indus., Inc.,* 681 S.E.2d 885 (S.C.2009). In deciding whether good cause exists, the trial court should consider the following factors: (1) the timing of the defendant's motion for relief, (2) whether the defendant has a meritorious defense, and (3) the degree of prejudice to the plaintiff if relief is granted. *Wham v. Shearson Lehman Bros.,* 298 S.C. 462, 465, 381 S.E.2d 499, 502 (Ct.App.1989). The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of that discretion. *Harbor Island Owners' Ass'n v. Preferred Island Prop., Inc.,* 369 S.C. 540, 544, 633 S.E.2d 497, 499 (2006).

■ As a primary matter, Appellants argue that the trial court erred in ruling on the merits of this issue because they did not have the opportunity to be heard and present evidence of good cause. We disagree. In their written motion to set aside the entry of default filed prior to the hearing, Appellants maintained that the entry of default was void because service of process was defective. Additionally, Appellants requested that, if the trial court denied relief based on this ground, the trial court "schedule a subsequent hearing based upon the

ground of mistake, inadvertence, surprise or excusable neglect"[2] because the insurance companies were still investigating the matter and they would "shortly have full information to support such a Motion." At the hearing, Respondent's counsel told the trial court that Appellants were moving to set aside the entry of default based on improper service and good cause and argued the merits of the good cause issue. Specifically, Respondent's counsel argued that there was nothing in the record from the insurance company explaining why it failed to answer the complaint and that, even if the failure to respond was due to negligent oversight, this did not constitute good cause. In rebuttal, Appellants' counsel argued that although the discovery process concerning the insurance company's failure to respond had not been completed, "we just really don't think we need to go that far."

After the trial court issued its order ruling that Appellants failed to show good cause, Appellants filed a motion to reconsider arguing that the trial court failed to consider the second part of the motion and never notified Appellants that it was denying their request for bifurcation. Additionally, Appellants attached affidavits from the insurance agent and the insurance company explaining why the insurance company never responded to the complaint. The trial court denied the motion for reconsideration.

In our view, bifurcation of this motion was not necessary, much less appropriate. Both "halves" of the motion went to the same issue, namely whether the trial court should set aside the entry of default, and Appellants had the opportunity to present evidence of improper service and good cause at the hearing.[3] In any event, we find that Appellants failed to reserve their right to revisit this issue. Appellants failed to move for bifurcation at the hearing, and even assuming that they requested bifurcation in the written motion filed prior to

---

**2.** Appellants appear to have confused the Rule 55(c) "good cause" standard with the more rigorous Rule 60(b) "excusable neglect" standard in the motion to set aside the entry of default. *See Sundown,* 681 S.E.2d 885 (S.C.2009) (explaining and comparing the applicable standards in a Rule 55(c) motion and a Rule 60(b) motion).

**3.** Appellants' counsel submitted a letter to the trial court the day after the hearing "regarding the issue of 'good cause' " and including case law supporting their position.

the hearing, Appellants did not seek a specific ruling on bifurcation from the trial court at the hearing. Furthermore, if the insurance company was in fact still investigating the incident, Appellants failed to seek a continuance in order to complete discovery on this issue.[4] In our view, Appellants were given a full and fair opportunity to be heard on this matter, and furthermore, Appellants had an opportunity to explain to the trial court why they needed more time to develop the record as to this issue.

Nonetheless, even considering the affidavits, Appellants' argument fails on the merits.[5] The insurance agent's affidavit indicates that he received a copy of the incident report, the police report, and inspection reports from the Department of Health and Environmental Control (DHEC) from Patidar shortly after the drowning occurred and that he mailed these documents to the insurance company.[6] He also stated that after the complaint was filed, he began receiving correspondence from Respondent's counsel addressed to him as well as another attorney. The insurance agent assumed the other attorney was defense counsel hired by the insurance company when in fact the attorney was another attorney for the plaintiff. The insurance agent stated he was not aware that the summons and complaint that Patidar forwarded to him were not also forwarded to the insurance company. An affidavit from the insurance company indicates that it never received the incident report from the insurance agent and the insurance company's internal process of contacting the adjusting company was therefore never triggered.

We hold that even assuming that the insurance company was at fault for not answering the complaint, Appellants failed to show good cause. Negligence of an insurance compa-

---

4. We note that although Appellants' counsel claimed the insurance company was still investigating the matter, he was able to submit the affidavits from the insurance company shortly after the hearing.

5. In their brief, Appellants request that this Court "consider [the affidavits] and rule upon the 'good cause' issue."

6. The insurance agent stated that he sells insurance policies and places coverage for his clients, but he has no role in the litigation process and once he reports a claim, the matter is transferred to the insurance company.

ny is imputed to a defaulting litigant and cannot constitute good cause to relieve Appellants from the entry of default. *See Roberts v. Peterson,* 292 S.C. 149, 355 S.E.2d 280 (Ct.App. 1987) (observing that the "courts of this state have consistently held that the negligence of an attorney or insurance company is imputable to a defaulting litigant") and *Williams v. Vanvolkenburg,* 312 S.C. 373, 440 S.E.2d 408 (Ct.App.1994) (imputing an attorney's negligence to a defaulting litigant). Moreover, the *Wham* factors do not weigh in favor of lifting the entry of default. Appellants filed the motion to set aside over two months after the entry of default, and Appellants have not asserted a meritorious defense or argued that Respondent will not be prejudiced if the entry of default is lifted.

Accordingly, we hold that Appellants have not established good cause to justify lifting the entry of default.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order refusing to set aside the entry of default.

WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.