**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Custom Performance Engineering, Inc., Respondent-Appellant,

v.

AM Industrial Group, LLC, Appellant-Respondent.

Appellate Case No. 2022-000348

———————

Appeal From Spartanburg County
J. Derham Cole, Circuit Court Judge,
Shannon Metz Phillips, Master-in-Equity

———————

Unpublished Opinion No. 2024-UP-275
Heard June 12, 2024 – Filed July 24, 2024

———————

**AFFIRMED**

———————

Carmen Vaughn Ganjehsani and Robert Wilder Harte, both of Richardson Plowden & Robinson, PA, of Columbia, for Appellant-Respondent.

Adam Crittenden Bach and Emily R. Godwin, both of Tonnsen Bach, LLC, of Greenville, for Respondent-Appellant.

———————

**PER CURIAM:**  This is a cross-appeal from the Master-in-Equity's damages award to Custom Performance Engineering, Inc. (Custom Performance) on its breach of contract action against AM Industrial Group, LLC (AMI) following the circuit court's denial of AMI's motion to set aside an entry of default.  On appeal, AMI argues (1) the circuit court erred in denying its motion to set aside the entry of default because good cause existed to set it aside; and (2) the master erred in its damages award because Custom Performance failed to meet its burden for establishing lost profits damages and failed to adduce evidence in support of portions of its other purported damages.  On cross-appeal, Custom Performance argues the master erred in holding Custom Performance was not entitled to cover damages.  We affirm.

1.  AMI argues the circuit court erred in denying its motion to set aside the entry of default.  We disagree.  *See Richardson v. P.V., Inc.*, 383 S.C. 610, 614, 682 S.E.2d 263, 265 (2009) ("The decision whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the [circuit] court."); *id.* ("The [circuit] court's decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion."); *In re Estate of Weeks*, 329 S.C. 251, 259, 495 S.E.2d 454, 459 (Ct. App. 1997) ("An abuse of discretion . . . occurs when the judge issuing the order was controlled by some error of law or when the order, based upon factual, as distinguished from legal conclusions, is without evidentiary support."); *Stark Truss Co. v. Superior Constr. Corp.*, 360 S.C. 503, 510, 602 S.E.2d 99, 102 (Ct. App. 2004) ("Rule 55(c), [of the South Carolina Rules of Civil Procedure (SCRCP)], allows the circuit court to set aside an entry of default 'for good cause shown.'" (quoting Rule 55(c))); *Williams v. Vanvolkenburg*, 312 S.C. 373, 375, 440 S.E.2d 408, 409 (Ct. App. 1994) ("Whether good cause is established is within the sound discretion of the [circuit] court."); *Sundown Operating Co. v. Intedge Indus., Inc.*, 383 S.C. 601, 607, 681 S.E.2d 885, 888 (2009) ("This standard requires a party seeking relief from an entry of default under Rule 55(c) to provide an explanation for the default and give reasons why vacation of the default entry would serve the interests of justice."); *id.* at 609, 681 S.E.2d at 889 (rejecting the petitioner's argument "that it should be granted relief from the entry of default because it should not be held responsible for the negligence of its insurance agent in failing to answer the complaint" and holding the argument was without merit "as the law is clear that an attorney or insurance company's misconduct is imputable to the client"); *Dixon v. Besco Eng'g, Inc.*, 320 S.C. 174, 178-79, 463 S.E.2d 636, 638-39 (Ct. App. 1995) (affirming the circuit court's finding that the defendant's misunderstanding of a deadline did not constitute good cause to set aside the entry of default).  We hold the circuit court did not abuse its discretion in finding AMI did not show good cause to excuse the

default.  AMI's insurer's negligence is imputed to it.  In addition, there is no indication in the record AMI reached out to Custom Performance to inquire about the extended deadline for the answer or to request additional time after the insurer denied coverage.  We therefore affirm the circuit court's denial of AMI's motion to set aside the entry of default.

2.  AMI argues the master erred in its award of damages to Custom Performance because Custom Performance failed to meet its burden for establishing lost profits damages and failed to produce evidence in support of its other purported damages.  We disagree.  *See Austin v. Specialty Transp. Servs., Inc.*, 358 S.C. 298, 310, 594 S.E.2d 867, 873 (Ct. App. 2004) ("The trial judge has considerable discretion regarding the amount of damages."); *id.* at 311, 594 S.E.2d at 873 (stating the appellate court's "task in reviewing a damages award is not to weigh the evidence, but to determine if there is any evidence to support the damages award"); *S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co.*, 310 S.C. 232, 234-35, 423 S.E.2d 114, 115 (1992) (stating that in order for a party to recover lost profits as a result of a breach of contract, the party seeking damages must prove (1) the profits "have been prevented or lost as a natural consequence of the breach of contract;" (2) the lost profits were reasonably "within the contemplation of the parties at the time the contract was made as a probable result of a breach of it"; and (3) the lost profits with reasonable certainty, as they cannot be "conjectural or speculative" (quoting *Drews Co. v. Ledwith-Wolfe Associates*, 296 S.C. 207, 213, 371 S.E.2d 532, 535-36 (1988))); *Moore v. Moore*, 360 S.C. 241, 255-56, 599 S.E.2d 467, 474-75 (Ct. App. 2004) ("The law does not require absolute certainty of data upon which lost profits are to be estimated, but all that is required is such reasonable certainty that damages may not be based wholly upon speculation and conjecture, and it is sufficient if there is a certain standard or fixed method by which profits sought to be recovered may be estimated and determined with a fair degree of accuracy." (quoting *Beck v. Clarkson*, 300 S.C. 293, 298-99, 387 S.E.2d 681, 684 (Ct. App. 1989))).  Custom Performance owner Joseph Adams testified Custom Performance lost revenue when several of its customers cancelled their contracts because Custom Performance was unable to fill their orders.  He stated Custom Performance expected profit margins of 2.5 times the cost for the BMW purchase order because it was high volume mass manufacturing and 3.5 times the costs on the other contracts.[1]  Calculating the numbers on the stand, Adams testified the lost

---

[1] In the post-hearing documents Custom Performance submitted the following purchase orders: (1) Saleen Automotive dated October 9, 2020 for $144,590.60; (2) Blow-By-Blow Racing dated April 2, 2021 for $125,235; and Purem by Eberspaecher (BMW) dated August 26, 2021 for $197,835.

profits totaled $257,680. Based on the foregoing, we hold the evidence supports the master's damages award for lost profits.

AMI's argument that the master erred in announcing her decision to award $257,680 for lost profits before she reviewed the post-hearing documents is not preserved as AMI never made this argument to the master. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

In addition, AMI's argument that Custom Performance did not prove its lost profit damages were foreseeable is not preserved. AMI did not make this argument to the master and the master did not address this element of lost profit damages. AMI's argument does not challenge the sufficiency of the evidence to support the master's finding because the master did not make a finding on this issue; therefore, a post-trial motion was necessary to bring the matter to the master's attention. *See Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 409 S.C. 563, 567, 762 S.E.2d 693, 695 (2014) ("Issue preservation rules are designed to give the trial court a fair opportunity to rule on the issues, and thus provide the [appellate c]ourt with a platform for meaningful appellate review."); *Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733 ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *Life of Georgia Ins. Co. v. Bolton*, 333 S.C. 406, 412, 509 S.E.2d 488, 491 (Ct. App. 1998) (holding an issue that was not ruled upon by the master was not preserved when no post-trial motion was filed to bring the matter to the master's attention).

AMI argues Custom Performance failed to mitigate any potential damages caused by the issues with the defective machine Custom Performance purchased from AMI (Original Machine). This argument is not preserved because the master did not address it and AMI failed to bring it to her attention in a post-trial motion. *See Life of Georgia Ins. Co.*, 333 S.C. at 412, 509 S.E.2d at 491 (holding an issue that was not ruled upon by the master was not preserved when no post-trial motion was filed to bring the matter to the master's attention).

AMI also argues the record does not support the master's award of $132,000 for the Original Machine. We disagree. The evidence in the record clearly shows the consideration for the Original Machine was $132,000, which Custom Performance paid with a trade-in of a welder valued at $20,000 and $112,000 in funds. *See Austin*, 358 S.C. at 311, 594 S.E.2d at 873 (stating the appellate court's "task in

reviewing a damages award is not to weigh the evidence, but to determine if there is any evidence to support the damages award").  AMI also contends the record does not support the master's award of $8,694 for tooling the original machine.  We disagree.  Adams's testimony that Custom Performance spent $8,694 for tooling the Original Machine supports this award.  *See Matter of Campbell*, 427 S.C. 183, 192 n.2, 830 S.E.2d 14, 19 n.2 (2019) (noting testimony is evidence).

3.  Custom Performance argues the master erred in refusing to award it damages to cover the difference in price between the Original Machine and the machine Custom Performance bought to replace the Original Machine when it did not work (Replacement Machine).  We disagree.  *See* S.C. Code Ann. § 36-2-712(1) (2003) (allowing the buyer to "'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller"); S.C. Code Ann. § 36-2-712(2) ("[T]he buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages . . . , but less expenses saved in consequence of the seller's breach."); § 36-2-712 cmt. 2 (explaining cover goods need not be "identical with those involved but commercially usable as reasonable substitutes under the circumstances of the particular case"); *id.* ("The test of proper cover is whether at the time and place the buyer acted in good faith and in a reasonable manner, and it is immaterial that hindsight may later prove that the method or cover used was not the cheapest or most effective.").  Here, the Original Machine's price was $132,000, while the Replacement Machine's price was $255,087.  Adams acknowledged the Replacement Machine had additional features, which Custom Performance could use to be more automated and more efficient.  We hold this evidence supports the master's finding that the Replacement Machine was not a reasonable substitute and Custom Performance was not entitled to cover damages.

**AFFIRMED.**

**THOMAS, MCDONALD, and VERDIN, JJ., concur.**